UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARIE VERNE,

              Plaintiff,

        -against-

NEW YORK CITY DEPARTMENT OF EDUCATION; MELANIE KATZ, Principal of Franklin Delano Roosevelt High School; ELIZABETH MESSMANN, Assistant Principal of Franklin Delano Roosevelt High School;

              Defendants.
-----------------------------------------------------------------X

**COMPLAINT**

__ Civ. __ ( )

JURY TRIAL DEMANDED

Plaintiff MARIE VERNE, by and through her attorneys GLASS HARLOW & HOGROGIAN LLP, as and for her Complaint, alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff MARIE VERNE ("Plaintiff" or "Verne"), a tenured Spanish teacher, brings this action against her employer the New York City Department of Education ("NYCDOE") and the individual defendants Melanie Katz and Elizabeth Messmann, based on age discrimination, disability discrimination, religious discrimination, and retaliation, in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq.; and Title VII of the Civil Rights Act of 1964

1

("Title VII"), 42 U.S.C. § 2000e et. seq.; as well as the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.; and the New York City Human Rights Law, N.Y.C. Administrative Code §§8-101 et. seq. ("NYCHRL").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331 as this matter involves federal questions.

3. Venue is proper in this District pursuant to 28 U.S.C. 1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

4. Plaintiff MARIE VERNE is a resident of the State of New York and a Spanish teacher employed within the school system operated by the New York City Department of Education.

5. At all times relevant herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") is a city school district established under the laws of the State of New York and Ms. Verne's employer.

6. At all times relevant herein, Defendant MELANIE KATZ was the Principal of Franklin Delano Roosevelt High School ("FDR High School") in Brooklyn, New York. She has been the principal since on or about 2016.

7. At all times relevant herein, Defendant ELIZABETH MESSMANN was and has been an Assistant Principal of Franklin Delano Roosevelt High School ("FDR High School") in Brooklyn, New York since on or about 2016.

**STATEMENT OF FACTS**

8. Ms. Verne began her career with the New York City Department of Education ("NYCDOE") as a full-time Spanish teacher in September 2000.

9. Ms. Verne has received mostly end of year Satisfactory or Effective annual ratings during her entire 20-year career, with several highly effective rated observations at FDR High School.

10. Prior to working at FDR High School in Brooklyn, New York, she worked as a teacher at two other schools, Prospect Heights High School and Wingate High School, in the 2000s.

11. In 2004, the DOE transferred Ms. Verne from Wingate High School to FDR High School.

12. Principal Melanie Katz and AP Elizabeth Messmann arrived at the high school in 2016-17 school year, and originally rated Ms. Verne effective overall for both 2016-17 and 2017-18 school year, including highly effective on some observation reports.

**Age Discrimination**

13. After arriving at FDR High School, Defendant Katz began a campaign to rid the school of all of its senior teachers, including but not limited to Ms. Verne.

14. Specifically, Defendant Katz has issued negative ratings to the most senior teachers; has directed her assistant principals to issue negative ratings to senior teachers; has issued letters to file and made false allegations of misconduct against senior teachers; and has instituted 3020-a charges against senior teachers, including Ms. Verne.

15. Many teachers approaching the age of retirement have been unfairly rated by school administration including Adrienne Hamill, Adrianne Naso, Rajmonda Ciruna, Vanessa Parkinson and Fella Bodero.

16. In contrast, FDR High School administration have hired younger teachers and, upon information and belief, a large majority of teachers (approximately 80%) of FDR High School current teachers are younger teachers under 35 years old.

17. Additionally, the younger teachers typically are provided with their own classrooms while senior teachers have to move to different classrooms each period throughout the day. For instance, Erin Williams Maples, Danica Janvier, Emily Gargiulo, Rebecca Simone, and Nancy Villalba who are young teachers in the language department at FDR High School, have their own classrooms, while older teachers such as Rajmonda Ciruna, Vanessa Parkinson and Adrienne Hamill have to move to different classrooms.

18. Ms. Verne presently is 63 years old and, upon information and belief, one of the oldest teachers in the foreign language department at FDR High School.

19. In December 2018, after Principal Katz has insinuated that Ms. Verne was senile, Principal Katz sent Ms. Verne to an involuntary medical examination about her psychological fitness to the NYCDOE Medical Bureau. Ms. Verne was immediately cleared by a DOE doctor at the Medical Bureau as fit in January 2019. Principal Katz has a pattern for sending older teachers and staff members at her school for involuntary medical examinations because of their age.

20. In June 2019, Ms. Verne received a Developing overall rating, the lowest overall rating for her career, with several poorly rated observations by her FDR High School administration, including several from Ms. Messmann, who had rated Ms. Verne's teaching effective before.

21. Since February 2020, following receipt of her original set of Education Law Section 3020-a ("3020-a") disciplinary charges, Ms. Verne has been reassigned from her teaching duties.

### Religious Discrimination

22. Ms. Verne is of the Christian religion and is a Seventh Day Adventist.

23. Since Ms. Verne arrived at FDR High School in 2004 and before the end of each school year, she received an early schedule at the school or modification to her schedule on Fridays to allow the accommodation of her religious observance of the Sabbath beginning at sunset on Fridays, which occurs earlier in the winter months. Other teachers with similar accommodations were Keisha Agard, Sonny Rodriguez, Stacey Henry, Michaelle Hippolyte, and Yves Saint Laurent.

24. In the 2017-18 and 2018-19 school years, Ms. Verne was assigned an early schedule at the school to allow the accommodation of her religious observance.

25. In June 2019, Ms. Verne spoke with AP Messmann, Ms. Verne's supervisor at the time, about giving her an early schedule for the 2019-20 school year for medical accommodations and reminded AP Messmann of her religious observance on Fridays. However, AP Messmann informed Ms. Verne that the school administration needed to rotate the schedule and assigned Ms. Verne a later schedule.  In contrast, Jewish teachers in the school were granted religious accommodations as usual.  For instance, Sonny Rodriguez, Stacey Henry, Michaelle Hippolyte, and Yves Saint Laurent did not work late on Fridays.

26. At the beginning of the 2019-20 school year, Principal Katz confirmed Ms. Verne's late schedule by denying Ms. Verne's preference for an earlier schedule, despite the availability of another Spanish teacher, Nancy Villalba, who could have covered the late schedule.

27. Additionally, Principal Katz could have reassigned students in Ms. Verne's 9th and 10th period classes to an earlier scheduled class to accommodate Ms. Verne's need to leave early on Fridays to observe the Sabbath, a policy followed by past administration when Ms. Verne received a late schedule.

### Disability Discrimination

28. Ms. Verne suffers from a disability of severe arthritis, a protected disability under the ADA. In October 2018, she was diagnosed with Osteoarthritis of the right knee and hip, requiring ongoing physical therapy 2-3 times a week.

29. Ms. Verne started physical therapy in December 2018. As Ms. Verne had an early schedule at that time and was leaving the school at 2:30 pm, she was able to attend her appointments.

30. On or about January 28, 2019, Ms. Verne was diagnosed with two brain tumors, which require frequent doctor visits and require her to miss school on an intermittent basis. Indeed, Ms. Verne had to begin going for routine visits with her primary care physician as well as visits with her neurosurgeon Dr. Thomas to monitor the size of the tumors as frequently as required. As Dr. Thomas's office closed early, sometimes Ms. Verne would ask the administration (Principal and Assistant Principal) to leave school early to make the appointments.

31. On June 14, 2019, following a meeting with AP Cecilia Accettura on June 7, 2019, Ms. Verne received a letter to file regarding latenesses resulting in the loss of a day from her CAR balance. Upon information and belief, Ms. Verne is the only teacher to lose CAR balance time for latenesses although many teachers would be late due to the lack of parking at the school and alternate side street parking in Brooklyn, NY, but would not receive such letters.

32. In June 2019, Ms. Verne spoke with AP Messmann about giving her an early schedule for the 2019-20 school year for her medical accommodations. However, AP Messmann informed Ms. Verne that the school administration needed to rotate the schedule, thereby denying her request, and giving Ms. Verne a later schedule.

33. On June 20, 2019, Ms. Verne had a meeting with AP Accettura, AP Messmann and her then UFT Chapter Leader Marjorie George regarding her time and attendance. Specifically, Ms. Verne was absent a total of 21 days for the 2018-2019 school year, three of which were self-treated and the remaining 18 of which were medically treated.

34. On June 26, 2019, Ms. Verne received a disciplinary letter to file regarding her time and attendance from AP Accettura advising her, though her absences may be medically warranted, they may still lead to disciplinary action, and suggested Ms. Verne apply for a FMLA leave for her ongoing medical condition. The letter related to excessive absences was unfairly put in Ms. Verne's file as she did not have another option.

35. At the beginning of the 2019-20 school year, Principal Katz confirmed Ms. Verne's late schedule by denying Ms. Verne's preference for an earlier schedule. After her request for an earlier schedule was denied, Ms. Verne did not have other options, and would take time off from work to attend her appointments.

36. Ms. Verne was scheduled to attend physical therapy 2 – 3 times a week. Eventually, due to the change of her schedule and not wanting to take additional time off from work, Ms. Verne was no longer able to make it to her appointments for physical therapy as she was leaving the school at 4:30 pm, instead of her prior departure time of 2:30 pm.

37. On September 5, 2019, Ms. Verne filed a Step 1 Grievance with her union UFT challenging the denial of her preferences regarding the schedule selected for the 2019-20 school year.

38. Ms. Verne should have been granted her preferences based on her seniority at the school.

39. On September 10, 2019, Principal Katz denied Ms. Verne's grievance and Ms. Verne was given a late schedule rather than the early schedule she requested.

40. On or about September 16, 2019, Ms. Verne provided notes from her physical therapist, neurologist, and orthopedic doctor to the FDR payroll secretary, detailing the need for an earlier schedule to leave to attend physical therapy approximately 2-3 times per week.

41. Even with the submitted doctor's notes, Principal Katz denied the change of Ms. Verne's schedule for the 2019-20 school year, which eventually forced Ms. Verne to take a FMLA leave in October 2019.

42. The change to Ms. Verne's schedule has forced her to miss necessary doctor appointments.

43. On October 3, 2019, Superintendent Prayor held a meeting with Ms. Verne, District Representative James Duncan, and Leena Dave, UFT Chapter leader, to discuss Ms. Verne's grievance.

44. On October 11, 2019, Superintendent Prayor denied her grievance, alleging that Ms. Verne failed to inform the principal of her health needs prior to the start of the school year, which is clearly untrue given the June 24, 2019 letter to file.

45. On October 15, 2019, after the denial of her medical accommodation request and having become sick in part because administration denied her requests for reasonable

accommodations, Ms. Verne applied for medical leave under the FMLA upon the advice of her UFT Representative.

46. Having no choice, Ms. Verne took an approved medical leave from October 16, 2019 through January 6, 2020, in which she had to use over 40 CAR personal sick bank days to cover her salary during this medical leave.

47. Upon her return from her medical leave in January 2020, Defendants have specifically discriminated and retaliated against Ms. Verne. On January 16, 2020, Ms. Verne was issued two disciplinary letters to file levying false allegations against her, one dated October 11, 2019, for misconduct and insubordination, and the other dated November 6, 2019, for verbal abuse. Upon information and belief, the disciplinary letters are false insofar as one may be based on a parent complaint with a forged signature, and both letters state she "refused to sign" when in reality she never had the opportunity to sign the letters. Defendants further retaliated against Ms. Verne by instituting Education Law Section 3020-a charges against her, and by erroneously substantiating a second set of charges based on another verbal abuse allegation, by letter to file dated February 24, 2020, for incidents allegedly occurring September 27, 2019.

48. Specifically, the original Section 3020-a charges were served on Plaintiff on or about February 6, 2020. Ms. Verne was then served with additional 3020-a charges on or about November 8, 2020, based on the verbal abuse allegation, after she had filed her SDHR complaint. Both sets of charges remain pending to date while she continues to be reassigned from her teaching duties. She continues to await an adjudication of the disciplinary charges.

49. Ms. Verne filed a discrimination charge with the New York State Division of Human Rights ("SDHR") and U.S. Equal Employment Opportunity Commission ("EEOC") on or about May 28, 2020. Ms. Verne withdrew her SDHR complaint based on administrative

convenience, and received her EEOC right to sue letter, dated March 25, 2021, on or about March 31, 2021. A copy of the right to sue letter is annexed hereto as Exhibit A.

### FIRST CLAIM FOR RELIEF

**(Against Defendant NYCDOE – Discrimination, Hostile Work Environment, and Retaliation Based on Age in Violation of the ADEA)**

50. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

51. Defendant NYCDOE, through the aforementioned conduct, has violated the ADEA by discriminating against Plaintiff, the oldest and most senior foreign language in her school, based on her age by substantiating investigations of misconduct against her, sending her to an involuntary medical examination, issuing her negative performance reviews and disciplinary letters to file, harassing and intimidating her and subjecting her to a hostile work environment, and issuing 3020-a charges seeking termination of her employment, and retaliating against her with additional disciplinary letters and 3020-a charges after she filed her protected SDHR complaint.

52. As a result, Plaintiff suffered damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF

**(Against Defendant NYCDOE – Discrimination, Hostile Work Environment, and Retaliation Based on Religion and Failure to Reasonably Accommodate in Violation of the Title VII)**

53. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

54. Defendant NYCDOE, through the aforementioned conduct, has violated the Title VII of the Civil Rights Act of 1964 by discriminating and retaliating against Plaintiff based on her Seventh Day Adventist religion by denying her an accommodation for her religious practices, substantiating investigations of misconduct against her, issuing her negative performance reviews and disciplinary letters to file, harassing and intimidating her and subjecting her to a hostile work environment, and issuing 3020-a charges seeking termination of her employment, and retaliating against her with additional disciplinary letters and 3020-a charges after she filed her protected SDHR complaint.

55. As a result, Plaintiff suffered damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

**(Against Defendant NYCDOE – Discrimination, Hostile Work Environment, and Retaliation Based on Disability and Failure to Reasonably Accommodate in Violation of the ADA)**

56. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

57. Defendant NYCDOE, through the aforementioned conduct, has violated the ADA by discriminating against Plaintiff based on her disability relating to her osteoarthritis and brain tumors, by denying her an accommodation for her disability, sending her to an involuntary medical examination, substantiating investigations of misconduct, issuing her negative performance reviews and disciplinary letters to file, harassing and intimidating her and subjecting her to a hostile work environment, issuing 3020-a charges seeking termination of her employment upon her return from a medical leave needed due to her disabilities, and retaliating against her with additional disciplinary letters and 3020-a charges after she filed her protected SDHR complaint.

58. As a result, Plaintiff suffered damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

**(Against all Defendants – Discrimination, Hostile Work Environment, and Retaliation Based on Age, Religion, and Disability in Violation of NYSHRL)**

59. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

60. Defendants, through the aforementioned conduct, have violated the NYSHRL by discriminating against Plaintiff based on her age, religion, and disability by denying her accommodations for her disability and religious practices, sending her to an involuntary medical examination, substantiating investigations of misconduct, issuing her negative performance reviews and disciplinary letters to file, harassing, and intimidating her and subjecting her to a hostile work environment, issuing 3020-a charges seeking termination of her employment, and retaliating against her with additional disciplinary letters and 3020-a charges after she filed her protected SDHR complaint.

61. As a result, Plaintiff suffered damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

**(Against all Defendants – Discrimination Based on Age, Religion, and Disability in Violation of the NYCHRL)**

62. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

63. Defendants, through the aforementioned conduct, have violated the NYCHRL by discriminating against Plaintiff based on her age, religion, and disability by denying her accommodations for her disability and religious practices, sending her to an involuntary medical examination, substantiating investigations of misconduct, issuing her negative performance

reviews and disciplinary letters to file, harassing, and intimidating her and subjecting her to a hostile work environment, issuing 3020-a charges seeking termination of her employment, and retaliating against her with additional disciplinary letters and 3020-a charges after she filed her protected SDHR complaint.

64. As a result, Plaintiff suffered damages in an amount to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for declaratory relief and damages as follows:

A. A declaratory judgment that Defendant NYCDOE is in violation of federal ADEA based on age;

B. A declaratory judgment that Defendant NYCDOE is in violation of federal ADA based on disability;

C. A declaratory judgment that Defendant NYCDOE is in violation of federal Title VII of the Civil Rights Act of 1964 based on religion/creed;

D. A declaratory judgment that Defendants are in violation of the New York State Human Rights Law;

E. A declaratory judgment that Defendants are in violation of the New York City Human Rights Law;

F. Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to the ADEA, ADA, Title VII and the New York State Human Rights Law and New York City Human Rights Law;

G. Awarding Plaintiff costs and reasonable attorneys' fees; and

H. Such other and further relief as to this Court may deem necessary, just, and proper.

Dated: New York, New York
June 21, 2021

                              **GLASS HARLOW & HOGROGIAN LLP**
                              Attorneys for Plaintiff Verne
                              85 Broad Street, 16th Floor @ WeWork
                              New York, NY 10004
                              (212) 537-6859

                              By: s/ Bryan Glass
                                  Bryan D. Glass, Esq.