UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                 :

MARIE VERNE,                                  :

                    Plaintiff,             :

                                                  :            21 Civ. 5427 (JPC)

       -v-                            :

                                                :            OPINION AND ORDER

NEW YORK CITY DEPARTMENT OF EDUCATION;  :
MELANIE KATZ, Principal of Franklin Delano
Roosevelt High School; ELIZABETH MESSMANN,  :
Assistant Principal of Franklin Delano Roosevelt High
School,                                        :

                                                :

                    Defendants.        :

                                                :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Plaintiff Marie Verne brings claims under federal, state, and city law against her former

employer, the New York City Department of Education ("Department of Education"), and two

former supervisors, Melanie Katz and Elizabeth Messmann, for their alleged discrimination

against her on the basis of her age, religion, and disabilities, their creation of a hostile work

environment on the basis of the same, their failure to accommodate her religion or disabilities, and

their retaliation against her for protected activity. Her claims are brought under the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"); Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the Americans with

Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"); the New York State Human

Rights Law, N.Y. Exec. Law §§ 290 *et seq.* (the "NYSHRL"); and the New York City Human

Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* (the "NYCHRL").

Because Verne has failed to sufficiently allege discriminatory intent as to religion tied to adverse employment actions, the Court dismisses her federal claim of religion discrimination, although her federal discrimination claims based on disability and age survive.  She also does not allege facts giving rise to an inference of causation between her engagement in protected conduct and any adverse act by Defendants, requiring dismissal of her retaliation claims under federal law against the Department of Education and under state and city law against Katz and Messmann. Verne has sufficiently pleaded a hostile work environment under the ADA and ADEA, as well as a failure to accommodate under both the ADA and Title VII.  But she has not sufficiently pleaded a hostile work environment under Title VII.  Verne's failure to comply with New York's notice of claim requirements preclude her NYCHRL and NYSHRL claims against the Department of Education.  Because Katz and Messmann are not "employers" for purposes of the NYSHRL, Verne's discrimination, and hostile work environment, claims under that statute fail.  As to Verne's NYCHRL discrimination and hostile work environment claims against those Defendants, Verne has failed to allege personal involvement by Messmann to sustain that claim against her, but has sufficiently alleged NYCHRL discrimination and hostile work environment claims against Katz. Verne's NYCHRL claims for retaliation fail for the same reason as her NYSHRL claims. Accordingly, and for the reasons discussed below, the Court grants Defendants' motion to dismiss in part and denies it in part.

## I.  Background

**A.      Facts[1]**

As of the filing of the Amended Complaint, Verne was a sixty-three-year-old Seventh Day

Adventist.  Am. Compl. ¶¶ 18, 22.  Verne began working for the Department of Education as a

full-time Spanish teacher in September 2000.  *Id*. ¶ 8.  In 2004, the Department of Education

transferred Verne to Franklin Delano Roosevelt High School ("FDR High School") in Brooklyn,

New York.  *Id*. ¶¶ 6, 11.  From her arrival at FDR High School in 2004 until the 2019-2020 school

year, Verne received an early schedule or modification to her schedule on Fridays to allow the

accommodation of her religious observance of the Sabbath, which begins at sunset on Fridays and

so occurs earlier in winter.  *Id*. ¶¶ 23-25.  Other faculty members received similar accommodations.

*Id*. ¶ 23.  Verne was one of the oldest teachers in the foreign language department at FDR High

School.  *Id.* ¶ 18.  Katz, the Principal of FDR High School, and Messmann, the Assistant Principal,

both arrived at the school during the 2016-2017 school year.  *Id.* ¶ 12.  Katz and Messmann rated

Verne "effective" overall for the 2016-2017 and 2017-2018 school years, including "highly

effective" on several observation reports.  *Id.*

Verne states that Katz began "a campaign to rid the school of its senior teachers" that

entailed her "issu[ing] negative ratings to the most senior teachers; . . . direct[ing] her assistant

principals to issue negative ratings to senior teachers; . . . issu[ing] letters to file and ma[king] false

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are
taken from the Amended Complaint.  Dkt. 26 ("Am. Compl."); *see also Interpharm, Inc. v. Wells
Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss
pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the
complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

allegations of misconduct against senior teachers; and . . . institute[ing] 3020-a charges[2] against senior teachers, including Ms. Verne." *Id.* ¶¶ 13-14.  Verne alleges that other teachers approaching the age of retirement were rated "unfairly" by the school administration.  *Id.* ¶ 15.  At the same time, the "FDR High School administration have hired younger teachers" and "a large majority of teachers (approximately 80%) of FDR High School current teachers are younger teachers under 35 years old." *Id.* ¶ 16.  Younger teachers also were typically provided their own classrooms while senior teachers had to move to different classrooms throughout the day.  *Id.* ¶ 17.  And Katz "has a pattern for sending older teachers and staff members" for involuntary medical examinations, including Verne who was sent for one in December 2018 and was "immediately" cleared as fit in January 2019.  *Id.* ¶ 19.

Verne was diagnosed with osteoarthritis in her right knee and hip in October 2018, a condition which requires her to attend physical therapy two to three times a week.  *Id.* ¶ 28.  Verne began this physical therapy in December 2018 and was able to attend her appointments due to her early schedule.  *Id.* ¶ 29.  Then, in late January 2019, Verne was diagnosed with two brain tumors which have required her to miss school on an "intermittent basis" in order to attend frequent medical appointments with her primary care physician and a neurosurgeon.  *Id.* ¶ 30.  As Verne's neurosurgeon's office closed early, Verne would sometimes request an early departure from work to make her appointments.  *Id.*

Matters came to a head in June 2019.  On June 7, 2019, Verne met with Assistant Principal Cecilia Accettura which led to a disciplinary letter to file regarding lateness on June 14, 2019.  *Id.*

---

[2] Section 3020-a of the New York Education Law governs the procedure of disciplinary proceedings brought against tenured teachers.  N.Y. Educ. Law § 3020-a.  These charges may be brought for, *inter alia*, unauthorized absence or excessive lateness, neglect of duty or "any substantial cause that renders the employee unfit to perform his obligations properly to the service."  N.Y. Educ. Law § 2590-j(7)(b).

¶ 31.  This letter to file resulted in a loss of one day from her sick leave balance.  *Id*.  Verne states that other teachers, who would be late to school due to a lack of parking at the school, did not receive similar letters.  *Id*.  Verne received from Accettura another disciplinary letter to file regarding her lateness and attendance on June 26, 2019.  *Id*. ¶ 34.  Accettura advised Verne that her absences could lead to disciplinary action even if they were medically warranted and suggested that Verne apply for leave under the Family and Medical Leave Act.  *Id*.  That month, Verne received an overall "Developing" rating, the "lowest" rating for her career, with poorly rated observations from Messmann and others.  *Id*. ¶ 20.

Also in June 2019, Verne spoke with Messmann about her preference for an early schedule for the 2019-2020 school year.  *Id*. ¶ 25.  Verne alleges that she spoke with Messmann about being assigned an early schedule for medical accommodations, but that she also reminded Messmann of her Friday Sabbath observances.  *Id*. ¶¶ 25, 32.  Messmann informed Verne that the school administration needed to "rotate the schedule" and instead assigned Verne a later schedule.  *Id*. ¶ 25, 32.  Yet Jewish teachers at the school were usually granted religious accommodations and did not work late on Fridays.  *Id*. ¶ 25.

On September 5, 2019, Verne filed a Step 1 Grievance[3] with her union, the United Federation of Teachers ("UFT"), challenging the denial of her preferred schedule which she contends should have been assigned to her "based on her seniority at the school."  *Id*. ¶¶ 37-38.  Katz denied Verne's grievance on September 10, 2019 and confirmed her later schedule.  *Id*. ¶ 39.  Verne alleges that another Spanish teacher could have "covered the late schedule" or "Principal

---

[3] A "Step 1 Grievance" is a grievance presented to the head of a teacher's school either orally or in writing.  *See generally* United Fed. of Tchrs., *Collective Bargaining Agreement, Classroom Teachers*, Art. 22(B)(1)(a) (2008-2019), https://www.uft.org/files/attachments/teachers-contract-2009-2018.pdf.

Katz could have reassigned students" from later classes to earlier classes "a policy followed by the previous administration when Ms. Verne received a late schedule." *Id.* ¶¶ 26-27.  On or about September 16, 2019, Verne provided FDR High School's payroll secretary with doctors' notes detailing her need for an earlier schedule to attend physical therapy. *Id.* ¶ 40.  Katz again denied the change of schedule.  *Id.* ¶ 41.  At some point Verne was no longer able to attend physical therapy due to her work schedule and missed other "necessary doctor appointments." *Id.* ¶¶ 36, 42.

Verne met with Superintendent Michael Prayor along with her union district representative and union chapter leader to discuss her grievance on October 3, 2019.  *Id.* ¶ 43.  On October 11, 2019, Prayor also denied the grievance, stating that Verne failed to inform the principal of her health needs prior to the start of the school year.  *Id.* ¶ 44.  Verne then applied for medical leave under the Family and Medical Leave Act "upon the advice of her UFT Representatives" "after the denial of her medical accommodation request and having become sick in part because [the] administration denied her requests for reasonable accommodations." *Id.* ¶ 45.  Verne began this leave on October 16, 2019 and ended it on January 6, 2020, having used forty sick days during this time. *Id.* ¶ 46.

After Verne returned from her medical leave in January 2020, she claims to have experienced discrimination and retaliation. *Id.* ¶ 47.  On January 16, 2020, Verne was issued two disciplinary letters to file that Verne claims stated false allegations against her. *Id.*  One letter, dated October 2019, was for misconduct and insubordination, and the other letter, dated November 2019, was for verbal abuse.  *Id.*  Verne alleges that one of these letters "appears to be based on a parent complaint with a forged signature" and that both letters state that she "refused to sign" them despite never having an opportunity to sign them.  *Id.*  Defendants issued another letter to file

against Verne which "erroneously substantiat[ed] a second set of charges based on another verbal abuse allegation" in late February 2020, for conduct occurring in September 2019. *Id.* ¶ 48.

On February 6, 2020, Defendants "institute[ed] Education Law Section 3020-a charges seeking [Verne's] termination." *Id.* ¶¶ 48, 49.  Verne was then served with further Section 3020-a charges on or about November 8, 2020, which were based on the September 2019 verbal abuse allegation. *Id.* ¶ 49.

Ultimately, Verne returned to FDR High School at the start of the 2021-2022 school year and was reassigned from her teaching duties to the library.  *Id.* ¶ 51.  However, after she complained that the cold temperature of the library aggravated her arthritis, she was transferred to her UFT chapter leader's office to sit there instead.  *Id.*  On September 19, 2021, Verne applied for medical accommodation through the Department of Education's online system to "work from home" due to a spinal stenosis diagnosis. *Id.* ¶ 52.  After not receiving a response by September 28, 2021, Verne called the Department of Education's medical bureau, which told her that her accommodation request had been closed due to a lack of supporting medical documentation.  *Id.* ¶ 53.  A follow-up e-mail that day informed her that her application had been administratively closed.  *Id.*  Verne contends that she did submit the necessary documentation for her accommodation.  *Id.*  Verne then filed for medical leave from September 27, 2021 to November 5, 2021 "for restoration of health" and faxed her medical records to the Department of Education. *Id.* ¶ 54.  On October 1, 2021 the Department of Education rejected this application, saying that Verne's medical records were not legible, prompting Verne to resend the documents.  *Id.* ¶ 55. The Department of Education never responded to the leave request.  *Id.* ¶ 56.  Verne was then no longer able to report to school due to a COVID-19 vaccine mandate which Verne could not satisfy

due to her ongoing medical issues.  *Id*. ¶ 57.  Verne submitted a retirement application effective November 5, 2021.  *Id*. ¶ 58.

**B.      Procedural History**

On May 28, 2020, Verne filed discrimination charges with the New York State Division of Human Rights ("SDHR") and the U.S.   Equal Employment Opportunity Commission ("EEOC").    *Id.*  ¶ 50.   Verne withdrew her SDHR complaint based on "administrative convenience," and received her EEOC right-to-sue letter, dated March 25, 2021, on or about March 31, 2021.  *Id.*

Verne initiated this suit on June 21, 2021, with the filing of her original complaint.  Dkt. 1.  A corrected complaint was then filed on June 28, 2021.  Dkt. 5.  Verne filed the Amended Complaint on December 3, 2021.  *See* Am. Compl.  In it, Verne brings the following five Causes of Action: (1) age discrimination, hostile work environment, and retaliation in violation of the ADEA against the Department of Education, Am. Compl. ¶¶ 59-61, (2) religion discrimination, hostile work environment, retaliation, and failure to accommodate in violation of Title VII against the Department of Education, *id.* ¶¶ 62-64, (3) disability discrimination, hostile work environment, retaliation, and failure to accommodate in violation of the ADA against the Department of Education, *id.* ¶¶ 65-68, (4) age, religion, and disability discrimination, hostile work environment, and retaliation in violation of the NYSHRL against all Defendants, *id.* ¶¶ 69-71, and (5) age, religion, and disability discrimination, hostile work environment, and retaliation, in violation of the NYCHRL against all Defendants, *id.* ¶¶ 72-74.   Verne requests declarations that the Department of Education is in violation of the ADEA, Title VII, the ADA, the NYSHRL, and the NYCHRL, and that Katz and Messmann are in violation of the NYSHRL and the NYCHRL.  *Id.*

at 15.  Verne also requests compensatory damages including emotional distress damages, punitive damages, and her costs and reasonable attorneys' fees.  *Id.* at 15-16.

On January 3, 2022, Defendants filed a motion to dismiss the action for failure to state a claim.  Dkt. 27.

## II.  Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III.  Discussion

### A.  Preliminary Issues

#### 1.  Failure to Timely Serve Katz and Messmann

Defendants argue that the claims against Katz and Messmann should be dismissed for failure to timely serve.  Dkt. 31 ("Defts. Mem.") at 6-8.  Pursuant to Federal Rule of Civil Procedure 4(m), a plaintiff must serve a defendant within ninety days of the filing of the complaint. Fed. R. Civ. P. 4(m).  If service is not completed within that time, the court must dismiss the action against that defendant or order that service be made within a specified time.  *Id.*  Courts "'must

extend the time for service for an appropriate period' if the plaintiff shows good cause for his [or her] failure to serve." *Barbosa v. City of New York,* No. 16 Civ. 7340 (LTS), 2018 WL 4625620, at *2 (S.D.N.Y. Sept. 26, 2018) (quoting Fed. R. Civ. P. 4(m)). "Good cause or excusable neglect is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond his [or her] control." *McKibben v. Credit Lyonnais,* No. 98 Civ. 3358 (LAP), 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999).

As noted, Verne filed the corrected original complaint on June 28, 2021. Dkt. 5. Verne was therefore required to serve Defendants by September 26, 2021. According to the Defendants, Messmann was not served until October 6, 2021, and Katz was not served until November 4, 2021. Defts. Mem. at 7-8.

Defendants thus acknowledge that Katz and Messmann were served in this case, and only argue that serve was untimely. *Id.* Service on Messmann was ten days late, and service on Katz was thirty-nine days late. But here, similar to *Chidume v. Greenburgh-North Castle Union Free School District*, No. 18 Civ. 1790 (NSR), 2019 WL 2866096, at *4-5 (S.D.N.Y. July 3, 2019), Defendants have been on notice of the litigation and have retained counsel who has filed notices of appearance for the individual Defendants on October 25, 2021, Dkt. 18 (Messmann), and November 15, 2021, Dkt. 24 (Katz). The filings of these notices of appearance even predated the filing of the Amended Complaint. *See Chidume*, 2019 WL 2866096, at *5. Because service has now been executed and Katz and Messmann have been on notice since the filing of the operative complaint, the Court denies Defendants' motion to dismiss for failure to serve.

### 2.     Notice of Claim for State Claims

Defendants next argue that Verne's state and city law claims against the Department of Education are barred for failure to file a timely notice of claim. Defts. Mem. at 9-10. New York

Education Law section 3813(1) requires a plaintiff to file a notice of claim prior to initiating a lawsuit against a school, school district, board of education, or education officer.  *See* N.Y. Educ. Law § 3813(1); *Rodriguez v. Int'l Leadership Charter Sch.,* No. 08 Civ. 1012 (PAC), 2009 WL 860622, at *5 (S.D.N.Y. Mar. 30, 2009) ("[F]ulfillment of the statutory requirements for filing a notice of claim is a condition precedent to bringing an action against a school district or a board of education and, moreover, failure to present a claim within the statutory time limitation . . . is a fatal defect." (alterations in original) (internal quotation marks omitted)).  Verne does not contest that she did not serve a notice of claim, but she appears to argue that her SDHR and EEOC complaints satisfy the notice of claim requirement.  Dkt. 41 ("Pl. Mem.") at 13.

"An EEOC charge can suffice as a substitute for a notice of claim 'only under the rare and limited circumstance where the EEOC charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district (and not a different arm of the district), and is served within the statutory time period.'"  *Rettino v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 5326 (JGK), 2020 WL 4735299, at *5 (S.D.N.Y. Aug. 14, 2020) (quoting *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10 Civ. 10 (LDW), 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010).  "The plaintiff must allege compliance with the notice-of-claim provision of the Education Law in the complaint."  *Id.* (citing *Hartley v. Rubio*, 785 F. Supp. 2d 165, 184-85 (S.D.N.Y. 2011)).

Verne does not allege that she served the EEOC complaint or SDHR complaint on any district entity, or even the content of those complaints.  Am. Compl. ¶ 50.  These administrative complaints therefore do not satisfy the notice of claim requirement, and Verne's claims against the Department of Education under the NYSHRL and the NYCHRL in the Fourth and Fifth Causes of

Action are dismissed.  *See Rettino*, 2020 WL 4735299, at *5 (dismissing claims when the plaintiff failed to allege service of an EEOC charge in his complaint).

### 3.    Timeliness of Federal Claims

"Before a plaintiff may assert claims under Title VII or the ADEA in federal court, she must present the claims forming the basis of such a suit in a complaint to the EEOC." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (Title VII); *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) (ADEA)).  The same is true of employment discrimination claims pursuant to the ADA.  *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 258 (S.D.N.Y. 2015).  A claim under each of these three statutes is time-barred if the plaintiff does not file a charge with the EEOC within 300 days of the alleged unlawful employment practice.  *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (Title VII); *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 112 (2d Cir. 2008) (ADEA); *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999) (ADA); *see also* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1).  "Where the plaintiff complains of discrete discriminatory or retaliatory acts such as 'termination, failure to promote, denial of transfer, or refusal to hire,' such claims are not actionable if they occurred prior to the 300-day period even though they may be 'related to' acts that occurred within the permissible 300-day period." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

Verne filed her complaint alleging discrimination with the EEOC on May 28, 2020.  Am. Compl. ¶ 50.  Any discrete discriminatory actions that occurred before August 2, 2019, are therefore time-barred under federal law.

Verne argues that alleged conduct prior to August 2, 2019 remains timely for purposes of supporting her federal claims because former New York Governor Andrew Cuomo's COVID-19 Executive Orders tolled the deadlines to commence civil legal action.  Pl. Mem. at 13.  But those state Executive Orders had no effect on tolling toll federal statutes of limitation.  *See Everett v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2022 WL 2342693, at *5 (S.D.N.Y. June 29, 2022) ("While this Executive Order tolled the 'procedural laws' of New York, it did not apply to [the plaintiff]'s Title VII claim: New York's 'various executive orders issued throughout the COVID-19 pandemic did not purport to toll time periods prescribed by federal law and they were not justified by any limitation of access to the federal courts.'" (quoting *Romero v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 21 Civ. 4951 (LJL), 2022 WL 624451, at *5 (S.D.N.Y. Mar. 2, 2022))); *Jamieson v. U.S. Postal Serv.*, No. 20 Civ. 6184 (NGG) (RML), 2022 WL 43767, at *2 (E.D.N.Y. Jan. 5, 2022) (noting that former Governor Cuomo's executive order could not toll federal claims).

In addition, Verne claims that the EEOC acknowledged that the COVID-19 pandemic may hinder complainants from meeting the regulatory timeframes set forth in 29 C.F.R. Part 1614, and that therefore, such complaints are subject to the equitable tolling provisions set forth in 29 C.F.R. § 1614.604(c).  Pl. Mem. at 13-14.  But "equitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights."  *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (brackets and internal quotation marks omitted).  The COVID-19 pandemic alone is insufficient to warrant equitable tolling without a more specific personal reason.  *See Gomez v. Henry St. Settlement*, No. 20 Civ. 5585 (AT) (BCM), 2021 WL 4943509, at *6 (S.D.N.Y. July 27, 2021), *report and recommendation adopted by* 2021 WL 4239177 (S.D.N.Y. Sept. 17, 2021); *Hines v.*

*United States*, Nos. 20 Civ. 10064 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021) ("While the effects of the COVID-19 pandemic could conceivably present extraordinary circumstances, '[a] petitioner cannot meet his burden of establishing that a court should apply the doctrine of equitable tolling simply by making a passing reference to the pandemic or the resulting lockdown.'" (alteration in original) (quoting *United States v. Aigbekaen*, No. 15 Cr. 462 (JKB), 2021 WL 1816967, at *1 (D. Md. May 6, 2021))).  Verne makes just such a passing reference to the pandemic, without establishing any specific reasons why she was prevented from exercising her rights in a timely manner.  Therefore, Verne has not met her burden of establishing that the Court should apply the doctrine of equitable tolling.

Verne also argues that the continuing violation doctrine brings within the limitations period incidents that occurred more than 300 days before her EEOC complaint was filed.  Pl. Mem. at 15. "The continuing violation doctrine provides that '[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last [violation].'" *Flores v. United States,* 885 F.3d 119, 122 (2d Cir. 2018) (alterations in original) (quoting *Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir. 1994)).  "To qualify as continuing, the claimed actions must not be discrete acts, but repeated conduct that occurs over a series of days or perhaps years." *Zoulas*, 400 F. Supp. 3d at 49 (internal quotation marks omitted); *accord Morgan,* 536 U.S. at 114.

Nonetheless, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan,* 536 U.S. at 114.  The Supreme Court has recognized an exception to this rule for hostile work environment claims which "are different in kind from discrete acts" in that "[t]heir very nature involves repeated conduct." *Id*. at 115.  Therefore, the claim is timely so long as the plaintiff timely filed with the

EEOC a complaint pertaining to any act that is part of the hostile work environment claim. *Id* at 118. Because Verne's EEOC complaint was filed within the 300-day period for at least some of the acts in question, she is not barred from arguing that actions prior to August 2, 2019 contributed to her hostile work environment claims. *Zoulas*, 400 F. Supp. 3d at 51.

In sum, Verne's allegations of Defendants' wrongdoing that occurred before August 2, 2019, are outside the federal limitations period, and the Court will not consider those allegations in assessing Verne's federal claims, except for Verne's hostile work environment claims, and as relevant background evidence. *See Davis-Garett*, 921 F.3d at 42 ("[E]xpiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim." (internal quotation marks omitted)).

## C.    Federal Discrimination Claims

Verne's First, Second, and Third Causes of Action allege age discrimination in violation of the ADEA, Am. Compl. ¶¶ 59-61, religion discrimination in violation of Title VII, *id.* ¶¶ 62-64, and disability discrimination in violation of the ADA, *id.* ¶¶ 65-68, respectively, and are brought against the Department of Education. Am. Compl. ¶¶ 59-68.

Each of these claims of workplace discrimination is evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Menaker v. Hofstra Univ.,* 935 F.3d 20, 30 (2d Cir. 2019) (Title VII); *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 106 (2d Cir. 2010) (ADEA); *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir. 2006) (ADA). To succeed under this framework, "a plaintiff must first demonstrate a *prima facie* case of employment discrimination by showing that: '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'"

*Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting *Menaker*, 935 F.3d at 30).  "[O]nce a plaintiff produces minimal evidentiary support for the claim of discriminatory motivation, the burden of production shifts to the employer to articulate a non-discriminatory reason for the adverse employment action." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).  "But once the employer has set forth its non-discriminatory justification, the plaintiff must then produce evidence capable of carrying the burden of persuasion that the employer's action was at least in part motivated by discrimination." *Id.*

To defeat a motion to dismiss, a plaintiff "is not required to plead a *prima facie* case under *McDonnell Douglas*." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Rather, a plaintiff must "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87

To infer discriminatory intent at the motion to dismiss stage, "the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" *Vega*, 801 F.3d at 85 (quoting *Twombly*, 550 U.S. at 570) (alteration in original).  A plaintiff must have "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.  The motivation component requires only that an adverse employment decision be motivated "at least in part by an 'impermissible reason' *i.e.*, a discriminatory reason." *Vega*, 801 F.3d at 87 (quoting *Stratton v. Dep't for the Aging for the City of New York*, 132 F.3d 869, 878 (2d Cir. 1997)).  One method of showing discriminatory intent is to show that disparate treatment between the plaintiff and a similarly situated employee outside of the protected group. *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate treatment—that is, a showing

that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000))).  A plaintiff may also point to "bits and pieces of information to support an inference of discrimination, *i.e.*, a mosaic of intentional discrimination."  *Vega*, 801 F.3d at 86 (internal quotation marks omitted).

Defendants argue that Verne has failed to allege an adverse employment action under any of the pleaded federal antidiscrimination statutes.  Defts. Mem. at 14-15.  For purposes of a discrimination claim, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  To be materially adverse[,] a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Boonmalert v. City of New York,* 721 F. App'x 29, 32 (2d Cir. 2018) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)).  Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Johnson v. Morrison & Foerster LLP,* No. 14 Civ. 428 (JMF), 2015 WL 845723, at *4 (S.D.N.Y. Feb. 26, 2015) (internal quotation marks omitted).

As previously noted, *see supra* III.A.3, conduct prior to August 2, 2019 cannot form the basis of Verne's federal discrimination claims.  Verne points to several actions during her employment at FDR High School that she appears to rely upon as constituting adverse employment action: (1) Verne's low assessment rating received in June 2019, Am. Compl. ¶ 20; (2) Verne's June 14 and 26, 2019 disciplinary letters to file which resulted in the loss of a day from her sick

leave balance, *id.* ¶¶ 31, 34; (3) Defendants' failure to assign her an early work schedule in June, September, and October of 2019, *id.* ¶¶ 32, 39, 44; (4) the two letters to file that Verne received on January 16, 2020, *id.* ¶ 47; (5) Defendants' instituting Section 3020-a charges against her on February 6, 2020, *id.* ¶¶ 48-49, and November 8, 2020, *id.* ¶ 49; and (6) constructive discharge due to a hostile work environment when she submitted her resignation application effective November 5, 2021, *id.* ¶ 58. *See* Pl. Mem. at 17-19. Only the third, fourth, fifth, and sixth entailed actions occurring on or after August 2, 2019,[4] and of those, only the denial of Verne's early work schedule request and the February 6, 2020 and November 8, 2020 Section 3020-a charges were sufficiently pleaded to constitute adverse employment actions.

Starting with the denial of Verne's requested early schedule, which occurred at least partially after the August 2, 2019 cut-off, *see* Am. Compl. ¶¶ 32, 39, 44, Verne has adequately alleged that this denial resulted in adverse changes to the terms and conditions of her employment, because she has alleged that it led to her medical leave, *id.* ¶¶ 45-46. While a "paid leave of absence does not constitute an adverse employment action," *Finnegan v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 20 Civ. 2837 (JMA) (ST), 2022 WL 1205426, at *6 (E.D.N.Y. Feb. 28, 2022) *report and recommendation adopted by* 2022 WL 1205029 (E.D.N.Y. Apr. 22, 2022), Verne alleges that she was forced to "cover her salary during this medical leave" by using time

---

[4] The Court notes that Verne may not have exhausted her administrative remedies through the EEOC for her constructive discharge claim, as her retirement occurred subsequent to her filing of EEOC charges. However, because Defendants do not raise this argument, *see* Defts. Mem. at 10-11, the Court considers it waived. *See Fort Bend Cnty. v. Davis*, 139 S.Ct. 1843, 1849, 1852 (2019) (holding that Title VII's EEOC charge filing requirement is mandatory but not jurisdictional, and thus is waivable). Additionally, it is generally the case that "[a] plaintiff need not file a second [EEOC] complaint to pursue claims that are reasonably related to those presented in a timely filed complaint." *Vargas v. Buchbinder & Warren LLC*, No. 03 Civ. 6624, 2004 WL 1488207 (DLC), at *3 (S.D.N.Y. July 1, 2004) (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686-87 (2d Cir. 2001)).

from her sick bank, Am. Compl. ¶ 46.  In effect this was then an unpaid leave, and "placing an employee on unpaid leave can constitute an adverse employment action."  *Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 264 (E.D.N.Y. 2015) (collecting cases).  Because Verne alleges that this leave was caused by Defendants' denial of her accommodation requests, the Court finds that she has adequately alleged that that denial constitutes an adverse employment action.  *See* Am. Compl. ¶¶ 45-46.

Second, Verne has sufficiently alleged that her February 6, 2020 and November 8, 2020 Section 3020-a charges were adverse employment actions because she has alleged that they resulted in her reassignment from her teaching duties.  Am. Compl. ¶ 21.  While the filing of disciplinary charges, without more, does not constitute an adverse employment action, *see Malone v. City of New York*, No. 05 Civ. 2882 (DGT), 2006 WL 2524197, at *7 (E.D.N.Y. Aug. 30, 2006) ("The filing of disciplinary charges does not constitute an adverse action when the charges have not yet been adjudicated, as the plaintiff has not suffered any adverse effects." (citing *Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996))), such charges can constitute adverse employment actions when accompanied by other consequences.  *See Lopez v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 9205 (RA), 2020 WL 4340947, at *7 (S.D.N.Y. July 28, 2020) (charges leading to a 15-day suspension without pay were sufficient).  Verne's reassignment from teaching was a significant diminishment of her material responsibilities, as evidenced by her allegation that following the reassignment she did not teach and instead sat in the library and later in her union chapter leader's office.  Am. Compl. ¶ 51.  This sufficiently alleges adverse employment actions with respect to the February 2020 and the November 2020 charges.

Third, Verne argues that the January 16, 2020 letters to file were adverse employment actions because they "ultimately led to Ms. Verne's Section 3020-a disciplinary charges and

constructive discharge." Pl. Mem. at 19. But that is not what the Amended Complaint alleges. In contrast to the February 24, 2020 letter to file, which Verne alleges gave rise to the November 8, 2020 Section 3020-a charges, Am. Compl. ¶¶ 48-49, Verne does not allege that the January 16, 2020 letters served as the basis for the original February 6, 2020 charges. In fact, she does not allege any consequences that arose from her January 16, 2020 letters to file. Without such consequences following the January 16, 2020 letters to file, Verne does not sufficiently allege that these letters constituted adverse employment actions.

Fourth, as for Verne's assertion that she was constructively discharged, "[a] constructive discharge constitutes an adverse employment action." *Rosen v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6670 (AT), 2019 WL 4039958, at *6 (S.D.N.Y. Aug. 27, 2019) (citing *Shapiro v. N.Y.C. Dep't of Educ.*, 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008)). "A 'constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Id.* (quoting *Trachtenberg v. N.Y.C. Dep't of Educ.*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013)). "Working conditions are intolerable when, viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003)). Verne must show that her "employers acted with the specific intent to prompt employees' resignations." *Kaplan-DiNola v. Bd. of Educ. of the City Sch. Dist.*, No. 15 Civ. 8139 (NRB), 2019 WL 5593286, at *3 (S.D.N.Y. Oct. 30, 2019) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004)) (internal quotation marks omitted). Because "[a] plaintiff who chooses not to contest charges should not be treated as if she had successfully contested the charges," Verne is "precluded as a matter of law from basing her constructive discharge claim on the filing of Section 3020-a Charges." *Kaplan-DiNola*, 2019 WL 5593286, at *3.

Verne's allegation of a constructive discharge fails because she cannot satisfy the intent requirement.  While the Amended Complaint is not entirely clear as to why Verne chose to resign from FDR High School, the allegations suggest that this decision resulted from a combination of the denial of her request to work from home, the failure of the Department of Education to adjudicate sufficiently swiftly her request for medical leave, and the implementation of a COVID-19 vaccine mandate.  Am. Compl.  ¶¶ 52-58.  Certainly nothing in the Amended Complaint suggests that the imposition of a vaccine mandate was intended to prompt Verne's resignation.  Nor do the allegations surrounding the Department of Education's handling of her work from home and leave requests create the inference of such an intent.  Verne submitted the request to work from home on September 19, 2021, and she learned that this request was denied as of September 28, 2021 because of the lack of supporting medical documentation.  *Id.* ¶¶ 52-53.  She does not allege that she resubmitted a remote work request with sufficient supporting medical documentation.  Verne first applied for medical leave on September 28, 2021, and that application was rejected on October 1, 2021 because her medical records were not legible.  *Id.* ¶¶ 54-55.  Verne resubmitted that application, this time with legible medical records, on October 5, 2021, and the Department of Education confirmed receipt of that application.  *Id.* ¶ 55.

The Amended Complaint does not state when Verne decided to retire from FDR High School, only that her application was "effective November 5, 2021," the date through when she had previously requested medical leave.  *Id.* ¶¶ 54, 58.  As noted, Verne first submitted the medical leave application on September 28, 2021, and resubmitted it on October 5, 2021 to cure the illegibility of her supporting medical records.  *Id.* ¶¶ 54, 55.  Even assuming that Verne did not file her retirement application until November 5, 2021 (the latest possible date), the lapse of time between the leave application and the retirement application does not allow the inference that

Defendants intentionally delayed processing her application in order to force her resignation. The Court therefore determines that Verne has not alleged a constructive discharge that would constitute an adverse employment action.

Therefore, as to each discrimination claim the only remaining question is whether Verne has adequately pled that the denial of her early schedule request and the February 6, 2020 and November 8, 2022 Section 3020-a charges and subsequent reassignment from teaching were implemented with the requisite discriminatory intent.

### 1.    ADEA

"The ADEA makes it unlawful for an employer 'to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Zoulas,* 400 F. Supp. 3d at 51 (quoting 29 U.S.C. § 623(a)(1)). The Amended Complaint must plead facts that "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn,* 795 F.3d at 311. As discussed above, a plaintiff may also point to "bits and pieces of information to support an inference of discrimination, *i.e.*, a mosaic of intentional discrimination." *Vega*, 801 F.3d at 86 (internal quotation marks omitted).

Verne has adequately alleged such discriminatory intent under the ADEA, because she has alleged that adverse employment actions—*i.e.*, instituting the February 6, 2020 and November 8, 2022 Section 3020-a charges—were motivated by her age. While Verne's scheduling request was made on the basis of her religion and disability, Am. Compl. ¶ 25, and nothing in the Amended Complaint alleges that it was denied due to her age, the Court is able to plausibly draw a minimal inference of age-based intent with respect to the Section 3020-a charges.

Verne's Amended Complaint is unclear as to the motive behind her Section 3020-a charges. To the extent the Court is able to discern from the Amended Complaint any alleged direct motive relating to the charges, it would seem to arise from the discussion of the charges as part of the "Disability Discrimination" section of the Amended Complaint and Verne's allegations suggesting retaliation for her taking medical leave. *See id.* ¶¶ 47-49. However, Verne has alleged that as part of a "campaign to rid the school of its senior teachers," *id*. ¶ 13-14, Katz unfairly rated senior teachers including her, *id*. ¶¶ 13-15, 20, issued letters to file and made false allegations of misconduct against senior teachers, including her, *id*. ¶¶ 14, 47-49, and instituted 3020-a charges against senior teachers, including her *id*. ¶ 14. While Verne does not name the other senior teachers that charges were brought against and does not explicitly allege that her own charges were motivated by her age, this alleged conduct as a whole is sufficient to plead a "mosaic of intentional discrimination" *Vega*, 801 F.3d at 86, that allows the Court to draw the inference favorable to Plaintiff that the Section 3020-a charges were brought at least "in part" due to Verne's age, *id*. at 87.

Therefore, the Court denies the motion to dismiss the First Cause of Action for discrimination.

### 2.    Title VII

While Verne offers no argument that her Section 3020-a charges were motivated by her religion, she does argue that the denial of her early schedule request was motivated by religion discrimination. Pl. Mem. at 22. In particular, Verne alleges that her request for an earlier schedule so that she could observe the Sabbath was denied while similar accommodations were granted for specific Jewish teachers. Am. Compl. ¶ 25. Verne makes no other allegations of religion discrimination. The Court construes this as a disparate treatment theory of discrimination.

23

"In order to succeed on a disparate treatment claim, a plaintiff 'must show [she] was similarly situated in all material respects to the individuals with whom [she] seeks to compare [herself].'" *Lopez,* 2020 WL 4340947, at *8 (quoting *Mandell,* 316 F.3d at 379).  In this Circuit, "[a]n employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Id.* at *9 (alteration in original) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010)).  Further, at the pleading stage, "a complaint generally must identify the similarly situated employees with some specificity."  *Id.* (internal quotation marks omitted).

Verne has failed to allege facts about either of the two individuals that she compares herself to, other than that they are Jewish, and one is a paraprofessional.  Am. Compl. ¶¶ 23, 25.  This, without more, is not sufficient to plead that she and they were similarly situated.  *See Mesais v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (allegations that a specific individual not in the plaintiff's protected class was treated differently were insufficient when the plaintiff had not alleged that they "worked in the same department, had the same job responsibilities, or had the same supervisors").  For that reason, the Court dismisses the Second Cause of Action for discrimination.

### 3.     ADA

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) [her] employer is subject to the ADA; (2) [she] is disabled within the meaning of the ADA; (3) [she] is otherwise qualified to perform the essential functions of [her] job; and (4) [she] suffered an adverse employment action because of [her] disability." *Laface v. E. Suffolk Boces,* 349 F. Supp. 3d 126, 145 (E.D.N.Y. 2018) (internal quotation marks omitted); *accord Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 198 (2d Cir. 2004).  At the motion to dismiss stage, "the Plaintiff needs only

allege a set of facts that . . . makes it plausible that the Plaintiff's disability was a motivating factor in the adverse employment action." *Laface,* 349 F. Supp. 3d at 145 (internal quotation marks omitted).

As stated above, *see supra* III.C.1, Verne has alleged that her Section 3020-a charges were brought at least in part due to her taking a medical leave due to her disabilities. Additionally, Verne has alleged that her request for an earlier schedule so that she could attend physical therapy was continuously denied by Defendants even after Verne presented notes from her doctors detailing the need for such a schedule, Am. Compl. ¶¶ 34, 35, 39, 41, 44. Though part of this conduct occurred outside the relevant period, the Court may consider it as background evidence. *See Davis-Garett*, 921 F.3d at 42. Considering all of these allegations together, the Court is able to draw the inference that the Section 3020-a charges were instituted at least in part due to Verne's disabilities. Therefore, the Court declines to dismiss the Third Cause of Action for discrimination.

## D.     Federal Hostile Work Environment Claims

Verne's First, Second, and Third Causes of Action additionally allege promotion of a hostile work environment in violation of the same three federal statutes, the ADEA, Title VII, and the ADA respectively, against the Department of Education. Am. Compl. ¶¶ 59-68.

Under Title VII "[t]o state a . . . claim for a hostile work environment, the plaintiff 'must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's' [protected characteristic]." *Everett*, 2022 WL 2342693, at *7 (second ellipsis in original) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). Claims under the ADEA and ADA are evaluated in the same manner as claims

under Title VII. *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII."); *Monterroso v. Sullivan & Cromwell, LLP,* 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008) (same for ADA).

"A hostile work environment is created '[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Moore v. DeJoy*, No. 18 Civ. 9967 (JPC), 2021 WL 4523503, at *5 (S.D.N.Y. Sept. 30, 2021) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). To determine whether an environment is "hostile" or "abusive," a court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The hostile work environment may result from "a single incident [that] was extraordinarily severe, or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted). But "[i]solated incidents or 'episodic' stray remarks are not 'sufficiently continuous and concerted in order to be deemed pervasive.'" *De Figueroa v. New York*, 403 F. Supp. 3d 133, 160-61 (E.D.N.Y. 2019) (quoting *Terry*, 336 F.3d at 148 ).

Defendants argue that Verne's allegations detail insufficiently severe and pervasive conditions and fail to state that any alleged discrete act was related to Verne's protected characteristics. Defts. Mem. at 18. The Court agrees with respect to Verne's federal hostile work environment claims based on her religion, but disagrees as to her hostile work environment claims under the ADEA and ADA.

26

### 1.    ADEA

First, Verne has stated a claim for a hostile work environment based on her age, for purposes of the ADEA.  She alleges that Katz "insinuated that [she] was senile," and sent her to an involuntary medical exam about her psychological fitness.  Am. Compl. ¶ 19.  Verne further alleges that she was given a lower than usual performance review, *id*. ¶ 20, suggests that this review was tied to her age as she alleges that other older teachers "have been unfairly rated by [the] school administration," *id*. ¶ 15, and similarly claims that Katz has "instituted 3020-a charges against senior teachers, including Ms. Verne," *id*. ¶ 14.  Verne also alleges that Katz "issued letters to file and made false allegations of misconduct against senior teachers," *id*., and that she personally received false letters to file on January 16, 2020, *id*. ¶ 47, and February 24, 2020, *id.* ¶ 48.  As previously stated, the Court holds Verne has sufficiently alleged that the 3020-a charges constituted an adverse employment event that altered the conditions of Verne's employment and that these charges were instituted with discriminatory intent.  *See supra* III.C.1.  All together, these allegations show a two-year period from December of 2018 to November of 2020 in which Verne was negatively reviewed on the basis of her age, repeatedly improperly disciplined on the basis of her age, and subject to age-based insults.  These allegations are sufficient to allege a hostile work environment on the basis of age, and so the Court declines to dismiss Verne' First Cause of Action under the ADEA for promotion of a hostile work environment.

### 2.    Title VII

Verne's hostile work environment claim based on religion under Title VII fails because the Court has already held that Verne fails to allege that the acts making up that claim were done with discriminatory intent on the basis of her religion.  Verne alleges that she was denied an early working schedule in June 2019, so she could observe the Sabbath on Fridays, and that Katz

confirmed this denial at the start of the 2019-2020 school year. *Id.* ¶¶ 25, 26. Verne further alleges that Jewish teachers at the high school were usually granted religious accommodations. *Id.* ¶ 25. As stated, Verne has failed to show that these other teachers were similarly situated and so has failed to allege discriminatory intent tied to the schedule request denial. The Court therefore dismisses Verne's Second Cause of Action under Title VII for promotion of a hostile work environment.

### 3.   ADA

Verne also alleges a hostile work environment based on her disability. Defendants do not argue that Verne's medical conditions are not protected under the ADA. With that in mind, Verne's Amended Complaint alleges continuous denials of her requests for accommodations to allow her to leave work and attend her necessary physical therapy and other doctor's appointments, Am. Compl. ¶¶ 32, 35, 39, 41, 44, and it alleges that after Verne returned from a medical leave she was retaliated against through the implementation of doctored-up disciplinary actions which could have led to her termination and did lead to a reassignment from her teaching duties, *id.* ¶¶ 21, 47-49. As alleged, these acts would have altered the conditions of Verne's work environment, and they are sufficiently tied to Verne's medical disabilities. The Court therefore denies Defendants' motion to dismiss the Third Cause of Action under the ADA for promotion of a hostile work environment.

### E.   Federal Retaliation Claims

Verne's First, Second, and Third Causes of Action additionally allege retaliation in violation of the ADEA, Title VII, and the ADA, respectively, against the Department of Education. Am. Compl. ¶¶ 59-68.

To plead a retaliation claim under Title VII, the ADEA, or the ADA, a plaintiff must plead facts plausibly alleging that (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (treating the ADEA and Title VII similarly) (citing *Cifra v. Gen. Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72-73 (2d Cir. 2019) (treating ADA similarly).   Because Defendants do not dispute the first three of these four elements, the Court assumes for the purposes of this motion that they have been adequately pleaded.

The "protected activity" pointed to by Verne is her May 25, 2020 charges of "age and disability discrimination" filed with the SDHR and EEOC. Pl. Mem. at 27.  Verne further argues that the November 8, 2020 Section 3020-a charges, reassignment from her teaching duties, and failure to act on accommodation and medical leave requests constitute the adverse actions in this case. *Id.* at 27-28.  Defendants respond that these events are insufficiently close in time to the protected activity to support an inference of causation.  Defts. Mem. at 20-21.

As currently pleaded, Verne's reassignment from teaching cannot form the basis of a retaliation claim because the Amended Complaint does not say when that reassignment occurred. *See* Am. Compl. ¶ 21.  Of course, if it occurred prior to May 28, 2020, it cannot form the basis of a retaliation claim because it would have happened prior to the protected activity.  And as discussed below, if it did not occur sufficiently soon after May 28, 2020, there would be insufficient temporal proximity for an inference of causation.  From these vague allegations, assuming both that the reassignment occurred after (but not too far after) Verne's complaints and also that the reassignment was in fact caused by those complaints is an inferential bridge too far.

Verne's allegations concerning the Department of Education's failure to act on any post-May 28, 2020 accommodation and medical leave requests also cannot state a claim for retaliation because they are too temporally distant from those requests.  Verne alleges that such conduct began around September 19, 2021, when she applied for a medical accommodation to allow her to work remotely from home, followed by other requests for leave.  *Id.* ¶¶ 52-56.  The possibly retaliatory conduct thus started in September 2021, roughly fifteen months after her filing of the EEOC complaint.  While there is no "bright line" for when a temporal relationship can no longer establish a causal relationship in the Second Circuit, *see Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (quoting *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)), a gap of fifteen months, without more, does not provide any basis for inferring in this case that the Department of Education's actions were caused by Verne's May, 28, 2020 complaints.

That leaves only the November 8, 2020 Section 3020-a charges "based on the verbal abuse allegation" which Verne claims "erroneously substantiat[ed]" that allegation.  Am Compl. ¶¶ 48-49.  Defendants argue that this five-month time gap is too long, and further that timing alone cannot give rise to an inference of causation given that prior disciplinary actions—including the February 6, 2020 Section 3020-a charge—were commenced before the EEOC charges were filed.  Defts. Mem. at 21.  Verne responds that temporal proximity must be assessed in the context of the specific case, and that "Defendants mislead regarding the gap in the retaliation claims, given their omission of the pandemic and summer vacation period for teachers."  Pl. Mem. at 28.

While Verne is correct that this temporal relationship must be assessed in the context of the particular case, she brings no allegations to reject the "more common" two-to-four-month limit, *id.* (citing *Woods v. Enlarged City Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 529 (S.D.N.Y.

2007) (collecting cases)), as an appropriate touchpoint.  Verne points to the existence of "summer vacation" as a reason to treat a five-month gap as "at most 2 to 3 months," *id.*, but no allegation in the Amended Complaint indicates that Verne and teachers generally could not be subject to disciplinary charges during the summer months.  Nor does anything indicate that Defendants "waited to exact their retaliation at an opportune time."  *Espinal*, 558 F.3d at 129.  Because Verne points to no other reason to infer that Defendants' actions were retaliatory, the Court dismisses her First, Second, and Third Causes of Action for retaliation in violation of federal law.

## F.    Federal Failure to Accommodate Claims

Verne's Second and Third Causes of Action allege that the Department of Education failed to accommodate her religion in violation of Title VII and failed to accommodate her disability in violation of the ADA, respectively.  Am. Compl. ¶¶ 62-68.

### 1.    Title VII

A *prima facie* case for a failure to accommodate claim requires a plaintiff to demonstrate that: "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Baker v. The Home Depot,* 445 F.3d 541, 546 (2d Cir. 2006) (internal quotation marks omitted).  The third prong "require[s] 'some adverse employment action . . . for refusing to comply with the conflicting employment requirement.'" *O'Neill v. City of Bridgeport Police Dep't,* 719 F. Supp. 2d 219, 225 (D. Conn. 2010) (quoting *Bowles v. N.Y.C. Transit Auth.,* Nos. 00 Civ. 4213 (BSJ) (MHD), 03 Civ. 3073 (BSJ) (MHD), 2006 WL 1418602, at *9 (S.D.N.Y. May 23, 2006)).  "Once a prima facie case is established by the employee, the employer 'must offer [him or her] a reasonable accommodation, unless doing

so would cause the employer to suffer an undue hardship.'" *Id.* (alteration in original) (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002))

In their moving brief, Defendants argue only that Verne's failure to accommodate claim under the ADA should be dismissed. *See* Defts. Mem. at 17-18 ("As Plaintiff never submitted a reasonable accommodation request regarding an early schedule, and did not take any action as to her assignment to a late schedule until after the school year started, *Plaintiff has failed to sufficiently allege that Defendants had notice of Plaintiff's disability and refused to make an accommodation.*" (emphasis added)). Defendants do not challenge Verne's Title VII failure to accommodate claim in their moving brief and only address it in their reply brief. *See* Dkt. 42 at 7-8. The Court declines to address Defendants' arguments raised for the first time in its reply brief. *See In re Dobbs*, 227 F. App'x. 63, 64 (2d Cir. 2007) ("[W]e think that it was entirely proper for the District Court to decline to consider debtor-appellant's argument, raised for the first time in its reply brief, regarding proximate causation."). But even if Court were to consider whether this claim should survive, the Court would still deny dismissal for the reasons stated for the ADA failure to accommodate claim, *see infra* III.F.2, namely, Defendants' failure to cite any authority requiring a notice to the employer prior to the start of the school year.

2.   ADA

The *prima facie* case for a failure to accommodate claim under the ADA requires a plaintiff to demonstrate that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York,* 711 F.3d 120, 125-26 (2d Cir. 2013) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d 92, 97

(2d Cir. 2009)).   Further, "[p]laintiff must plead sufficient facts to raise the inference 'that the failure [to accommodate] was motivated by discriminatory intent.'"   *Novick v. Vill. of Wappingers Falls*, 376 F. Supp. 3d 318, 337 (S.D.N.Y. 2019) (quoting *Lyman v. City of New York,* No. 01 Civ. 3789 (RWS), 2003 WL 22171518, at *6 (S.D.N.Y. Sept. 19, 2003)).

Defendants argue that Verne fails to allege a failure to accommodate claim stemming from their decision not to provide her with an early schedule for the 2019-2020 school year because she never submitted a reasonable accommodation request (because she did not make the request until after the school year started) and therefore failed to allege that Defendants had notice of her disability and refused to make an accommodation.   Defts. Mem. at 17-18.   Even assuming *arguendo* Defendants' contention that Verne did not notify them of her need for an early schedule to accommodate her medical appointments, Verne adequately alleges that she provided notice regarding her disability in September 2019 when she submitted notes from multiple doctors to her school regarding her need to attend physical therapy.  Am. Compl. ¶ 40.   Additionally, Verne met with Superintendent Prayor on October 3, 2019 to discuss her grievance based on the denial of her early schedule request.  *Id.* ¶ 43.   While Superintendent Prayor denied Verne's grievance on the basis that Verne failed to notify Katz of her health needs "prior to the start of the school year," *id.* ¶ 44, Defendants make no argument and cite no authority indicating that there is a notice "prior to the start of the school year" requirement in the ADA.   Defts. Mem. at 17-18.   The Court denies Defendants' motion to dismiss Verne's failure to accommodate claims under the ADA.

In addition, Defendants make no argument in their moving brief addressing a failure to accommodate theory arising Verne's requests to work from home in September 2021 due to her spinal stenosis.  Am. Compl. ¶¶ 52-53.   Therefore, Verne's failure to accommodate claim based on these allegations survives as well.

G.      **State and City Claims**

Verne's Fourth and Fifth Causes of Action plead discrimination, hostile work environment, and retaliation in violation of the NYSHRL against all Defendants, Am. Compl. ¶¶ 69-71, and discrimination, hostile work environment, and retaliation in violation of the NYCHRL against all Defendants, *id.* ¶¶ 72-74.  As discussed above, these claims are dismissed against the Department of Education because Verne failed to file a timely notice of claim.  *See supra* III.A.2.  Defendants further argue that the claims against Katz and Messmann must be dismissed for "lack of personal involvement" because "there is no individual liability where an individually named defendant did not have ownership interest in a company or have authority to carry out personnel decisions." Defts. Mem. at 23.

Under the NYSHRL, a corporate employee, even if she holds a supervisory title, is not subject to suit for discrimination or hostile work environment under the NYSHRL.[5]  *See Patrowich v. Chem. Bank*, 473 N.E.2d 11, 12 (N.Y. 1984) (per curiam); *accord Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 459 (N.Y. 2021) ("[W]e held in *Patrowich* that the State HRL does not render employees liable as individual employers. . . .  [Under the NYSHRL] a corporate employee simply does not qualify as an 'employer,' regardless of the employee's position or relationship to the employer . . . .").  While individual employees are subject to liability under the aiding and abetting provision of the NYSHRL at section 296(6), Verne does not allege aiding and abetting liability in this case.  Additionally, the New York Court of Appeals explained in *Bloomberg* that, for purposes of the NYCHRL, employees "may incur liability only for their own discriminatory conduct, for

---

[5] The NYSHRL's anti-retaliation provision provides for suit against "any person" and so does allow for personal liability.  N.Y. Exec. Law § 296(7).

aiding and abetting such conduct by others, or for retaliation against protected conduct." 36 N.E. at 460.

Because, as alleged in the Amended Complaint, Katz and Messmann are not employers under state law, the Court dismisses the NYSHRL claim against them as to discrimination and hostile work environment.[6]  That leaves only the NYSHRL retaliation claim and the NYCHRL discrimination claim, and under each either Defendant can be liable only for their own conduct.

### 1.    NYSHRL and NYCHRL Retaliation

NYSHRL section 296(7) makes it "an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  N.Y. Exec. Law § 296(7).

The NYCHRL imposes an identical standard to that of the NYSHRL except "the plaintiff need not [allege] any 'adverse' employment action; instead, she must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Benzinger v. Lukoil Pan Ams., LLC,* 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020)  (alteration omitted). As with the NYSHRL, the causal connection can be shown temporally.  *Mooney v. City of New York*, No. 18 Civ. 328 (DLC), 2018 WL 4356733, at *9 (S.D.N.Y Sept. 12, 2018).  "To survive a

---

[6] Based on the Amended Complaint and the parties' briefing, Verne does not appear to bring a failure to accommodate claim under the NYSHRL or the NYCHRL.  Section 296(3)(a) of the NYSHRL makes it "an unlawful discriminatory practice for an *employer* . . . to refuse to provide reasonable accommodations to the known disabilities . . . of an employee."  N.Y. Exec. Law § 296(3)(a).  Any failure to accommodate claim against Katz and Messmann under the NYSHRL therefore would suffer from the same shortcomings as her state discrimination and hostile work environment claims against those Defendants.  In the event Verne intends to bring a failure to accommodate claim under the NYCHRL, she must clearly plead such a claim in a Second Amended Complaint.  *See infra* III.H.

motion to dismiss [a retaliation claim under the NYCHRL], a plaintiff need only allege that retaliatory animus played some role in the employer's decision." *Cardwell v. Davis Polk & Wardwell LLP,* No. 19 Civ. 256 (GHW), 2021 WL 4434935, at *32 (S.D.N.Y. Sept. 23, 2021).

Verne argues that Defendants retaliated against her for filing her SDHR and EEOC complaints on May 25, 2020. Pl. Mem. at 27. But as stated, under the NYSHRL and NYCHRL, Defendants are each only liable for their personal actions. Verne alleges no conduct undertaken after May 25, 2020 by Messmann which could form the basis of a retaliation claim. Messmann's final alleged action occurred on June 20, 2019. Am. Compl. ¶ 33.

With respect to Katz, the final action specifically naming her occurred around September 16, 2019. *Id.* ¶¶ 40-41. And while Verne's subsequent allegations against broadly referenced "Defendants" are insufficient to allege Katz's or Messmann's own personal retaliatory conduct, Verne does also allege that Katz instituted 3020-a charges against her, *id.* ¶ 14, though it is unclear which charges that allegation refers to. Ultimately, though, the Court is unable to draw an inference of causation with respect to even the November 8, 2020 charges, which occurred after the May 28, 2020 complaints, for the same reasons discussed above: they occurred too far after Verne's complaints to support an inference of retaliation from timing alone.

For these reasons, the Court dismisses the Fourth and Fifth Causes of Action for retaliation against Katz and Messmann.

### 2.   NYCHRL Discrimination and Hostile Work Environment

The NYCHRL states "[i]t shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age . . . [or] disability . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C, Admin. Code. § 8-107(1). "Courts must analyze NYCHRL

claims separately from any federal law claims and should construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Bueno v. Eurostars Hotel Co., S.L.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F. 3d 102, 109 (2d Cir. 2013)).   To show discrimination or a hostile work environment under the NYCHRL, a plaintiff need only show that she was "treated . . . less well, at least in part for a discriminatory reason.'" *Khwaja v. Jobs to Move America*, No. 19 Civ. 7070 (JPC), 2021 WL 3911290, at *3 (Sept. 1, 2021) (quoting *Mihalik*, 715 F.3d at 110 n.8 ); *see also Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 337 (S.D.N.Y. 2021) ("[Plaintiff] brings claims under the NYCHRL for disparate compensation, denial of promotions, and what she frames as a hostile work environment.  For each of those claims she must show that she was treated 'less well' on the basis of her [protected characteristic] due to Defendant's discriminatory intent.").  The severity and pervasiveness of conduct is "relevant only to the issue of damages" and "the challenged conduct need not even be 'tangible (like hiring or firing).'" *Mihalik*, 715 F.3d at 110 (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (App. Div. 2009)).  It is sufficient to show "differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014).  Additionally, while truly trivial conduct may not be actionable under the NYCHRL, the "employer has the burden of proving the conduct's triviality under the NYCHRL," as an affirmative defense. *Mihalik*, 715 F.3d at 111.

Even under the broad standards of the NYCHRL, Verne has failed to state a claim for discrimination against Messmann.  Verne alleges that Messmann provided several negative performance evaluations in 2019, Am. Compl. ¶ 20, denied Verne's request for an earlier schedule in June 2019 while "Jewish teachers were granted religious accommodations as usual," *id.* ¶¶ 25,

32, and spoke to Verne about "her time and attendance" on June 20, 2019, *id.* ¶ 33.  Setting aside the fact that these allegations fail to indicate that Messmann in particular treated Verne "less well" than younger, non-disabled, or non Seventh Day Adventist teachers, nothing in these allegations indicate that Messmann acted "at least in part for a discriminatory reason."  *Khwaja*, 2021 WL 3911290, at *3 (internal quotation marks omitted).  The closest Verne gets is in her allegation that her schedule differed from those of Jewish teachers, but Verne does not allege that Messmann conducted scheduling for the entire school or that she was responsible for scheduling those other teachers.  These allegations, without more, cannot raise an inference of discriminatory intent to any degree against Messmann.  The Court therefore dismisses Verne's Fifth Cause of Action against Messmann.

Verne does plead a claim against Katz under the NYCHRL, however.  Verne's allegations that Katz insinuated she was senile and subjected her to an involuntary medical exam on that basis while also sending other older teachers for evaluations because of their age, Am. Compl. ¶ 19, are sufficient at this stage to state a claim that Katz treated her less well because of her age.  Therefore, the Court declines to dismiss the Fifth Cause of Action against Katz.

## H.    Leave to Amend

Lastly, the Court considers whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Verne has asked the Court for leave to amend her Complaint.  The Court will grant Verne leave to file an Amended Complaint, in the event she believes she can plead facts that would adequately state a claim upon which relief may be granted.  Because some of Verne's claims survive, Defendants would not be unduly prejudiced by an amendment and are on notice as to the basic circumstances underlying Verne's claims.  The Court emphasizes, however, that Verne

should amend only if she is able to resolve the pleading deficiencies outlined in this Opinion and Order.

## IV.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss in part and denies it in part.  The Court dismisses the First Cause of Action (ADEA) with respect to the retaliation claim.  With respect to the Second Cause of Action (Title VII), the Court dismisses as to religion discrimination, hostile work environment, and retaliation, but denies dismissal as to a failure to accommodate based on religion.  With respect to the Third Cause of Action (ADA), the Court dismisses as to retaliation based on disability, but otherwise denies dismissal.  The Court dismisses the Fourth Cause of Action (NYSHRL) in its entirety.  And with respect to the Fifth Cause of Action (NYCHRL), the Court dismisses in its entirety as to the Department of Education, and Messmann, and dismisses as to Katz only with respect to retaliation.  The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 39.

SO ORDERED.

Dated: September 30, 2022
       New York, New York

JOHN P.  CRONAN
United States District Judge