UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                             :

MARIE VERNE,                               :
                                             :

                     Plaintiff,           :
                                             :                     21 Civ. 5427 (JPC)

        -v-                                 :
                                             :                  OPINION AND ORDER

NEW YORK CITY DEPARTMENT OF EDUCATION   :
and MELANIE KATZ, Principal of Franklin Delano   :
Roosevelt High School,                         :
                                             :

                     Defendants.        :
                                             :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Marie Verne, a former high school teacher in New York City, brings claims under the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"); Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); and the Americans with

Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), against her former employer, the

New York City Department of Education (the "DOE"), alleging that the DOE discriminated

against her on the basis of her age and disability, created a hostile work environment, and failed to

accommodate her religion and disability.  Verne also brings claims under the New York City

Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"), against Melanie Katz,

the Principal of the school where she worked, for age discrimination and the creation of a hostile

work environment.

       On September 30, 2022, the Court issued an Opinion and Order granting in part and

denying in part Defendants' motion to dismiss Verne's Amended Complaint.  *Verne v. New York*

*City Dep't of Educ.*, No. 21 Civ. 5427 (JPC), 2022 WL 4626533 (S.D.N.Y. Sept. 30, 2022).  With

discovery now complete, before the Court is Defendants' motion for summary judgment on Verne's remaining causes of action.  For the reasons that follow, the Court grants Defendants' summary judgment motion in part and denies it in part.  The Court grants summary judgment in favor of the DOE on Verne's ADA discrimination, ADEA hostile work environment, ADA hostile work environment, and Title VII failure to accommodate claims.  The Court denies summary judgment on Verne's ADEA discrimination and ADA failure to accommodate claims against the DOE, and on her NYCHRL claim against Katz.

## I. Background

### A.    Facts[1]

Verne, a Seventh Day Adventist who is sixty-five years of age, was employed by the DOE from 2000 until her resignation on or about November 5, 2021.  Defts. 56.1 Stmt. ¶¶ 1, 5; Dkt. 69 ("Glass Declaration"), Exh. 5 ("Verne Dep. Tr.") at 10:25-11:1.  She began teaching Spanish full-time at Franklin Delano Roosevelt High School ("FDR High School") in Brooklyn in 2005.  Defts. 56.1 Stmt. ¶ 2.  She contends that, at some point in 2018 or 2019, she was diagnosed with arthritis.

---

[1] These facts are mainly drawn from Defendants' statement of undisputed material facts under Local Civil Rule 56.1(a), Dkt. 64 ("Defts. 56.1 Stmt."), Verne's counter-statement under Rule 56.1(b), Dkt. 68 ("Pl. Counter 56.1 Stmt."), and the exhibits filed by the parties.  Unless otherwise noted, the Court cites only to Defendants' statement of undisputed material facts when Verne does not dispute the fact, has not offered admissible evidence to refute it, or—as is frequently the case in Verne's Rule 56.1 counter-statement—simply seeks to add her own "spin" on the fact or otherwise dispute the inferences drawn from it.

Defendants note that Verne's thirty-six page brief opposing summary judgment, Dkt. 70 ("Opposition"), exceeded the twenty-five page limit for memoranda of law under the Court's Individual Rules.  Dkt. 73 ("Reply") at 1 n.1; *see* Individual Rules and Practices in Civil Cases of Hon. John P. Cronan, Rule 2.B.  Verne is reminded of her obligation to comply with the Court's Individual Rules.  Nevertheless, because Verne's non-compliance does not appear to have resulted from bad faith, the Court declines to strike her brief.  *See generally Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

*Id.* ¶ 6; Glass Declaration, Exh. 4 (February 2019 medical records).  At least during the 2018-2019 school year, Verne would occasionally attend physical therapy appointments for her arthritis after school hours.  Defts. 56.1 Stmt. ¶ 8; Pl. Counter 56.1 Stmt. ¶ 8.  Verne also testified that she was later diagnosed with spinal stenosis in 2021, a condition that she contends aggravated her preexisting arthritis and for which she occasionally attended physical therapy.  Defts. 56.1 Stmt. ¶¶ 13, 15; Pl. Counter 56.1 Stmt. ¶ 14.

Two of Verne's supervisors at FDR High School were Katz and Elizabeth Messmann.  In 2015, Katz was appointed the school's Principal, a position she continues to hold.  *Id.* ¶ 3.  Messmann served as the Assistant Principal of English as a New Language and World Languages at the high school from February 2017 to August 2021.  *Id.* ¶ 4.[2]

From 2014 through 2017, Verne regularly received either "effective" or "highly effective" ratings in her performance reviews, based in part on informal and formal classroom observations.  *See* Glass Declaration, Exhs. 12-14.  Starting in the 2018-2019 school year, however, Verne's ratings took a turn for the worse.  A classroom observation of Verne conducted on October 25, 2018 resulted in Messman giving Verne mostly "developing" ratings, in part criticizing Verne's pedagogical approach with her students.  Defts. 56.1 Stmt. ¶ 27; Dkt. 63 ("Rosen Declaration"), Exh. G.  Classroom observations of Verne conducted in December 2018, March 2019, and May 2019 yielded similar results.  Defts. 56.1 Stmt. ¶¶ 28, 38, 42; Rosen Declaration, Exhs. J, R, V.  In part due to these evaluations, Verne received an overall rating of "developing" for the 2018-2019 school year.  Defts. 56.1 Stmt. ¶ 52; Rosen Declaration, Exh. I.  As a result, Verne was placed on

---

[2] Verne also named Messmann as a Defendant in her Amended Complaint, *see* Dkt. 26 ("Am. Compl."), but the Court's September 30, 2022 Opinion and Order dismissed all claims against Messmann, *Verne*, 2022 WL 4626533, at *16-17.  Messmann was accordingly terminated as a party in this case.

a Teacher Improvement Plan ("TIP") for the following school year.  Defts. 56.1 Stmt. ¶ 71.

Verne's union representative raised concerns to a district union representative that Verne's TIP

was not achievable.  Glass Declaration, Exh. 25.

The record reflects that additional concerns regarding Verne's performance arose during

the 2018-2019 school year and continued into the following year.  Messmann wrote to Verne about

multiple complaints received from parents in fall 2018 relating to Verne's teaching ability,

classroom behavior, and unresponsiveness to parents.   Defts. 56.1 Stmt. ¶¶ 22-24; Rosen

Declaration, Exhs. D-F.  Following a handful of incidents—occurring largely in fall 2018—that

caused Katz to question Verne's fitness for duty, Katz wrote to the superintendent responsible for

FDR High School in December 2018, recommending that Verne undergo a psychological

evaluation pursuant to New York Education Law section 2568.  Rosen Declaration, Exh. K; *see*

N.Y. Educ. L. § 2568 (allowing certain school superintendents "to require any person employed

by the board of education . . . to submit to a medical examination . . . in order to determine the

mental or physical capacity of such person to perform his duties").  The superintendent directed

an examination and Verne was ultimately found fit for duty the following month.  *See* Rosen

Declaration, Exh. M.  Nevertheless, Verne's difficulties continued through the spring 2019

semester, with Verne receiving four disciplinary letters in June, which accused her of having

twelve tardy arrivals and twenty-one absent days over the course of the 2018-2019 school year

(although eighteen of the absences were for medical reasons), ripping up a student's test in front

of the class, and refusing to accept a student's work and giving that student a zero on a test for

failing to sit in a specific seat.  Defts. 56.1 Stmt. ¶¶ 40, 41, 43, 46.  Verne, however, maintains that

parking issues largely caused her tardy arrivals, disputes that she ripped up a student's test, and

filed a grievance over Katz's "investigative protocols" with respect to the accusation concerning

the student who did not sit in a particular seat, asserting that the charge "was not reasonable based on the evidence." *Id.* ¶ 45; Rosen Declaration, Exh. T; Glass Declaration, Exh. 19.  Verne received two additional letters in her file the following school year.  The first was dated October 11, 2019 and concerned Verne's supposed noncompliance with departmental grading policies.  Defts. 56.1 Stmt. ¶ 51; Rosen Declaration, Exh. Y.  Verne filed a grievance disputing this allegation.  Glass Declaration, Exh. 17.  The second, dated February 24, 2020, concerned a September 27, 2019 incident during which Verne allegedly told a student that "[y]ou kids are disrespectful and your parents didn't raise you right."  Defts. 56.1 Stmt. ¶ 104; Rosen Declaration, Exh. NN.  The February 24, 2020 letter characterized Verne's comment as "verbal abuse" under school district policy.  Rosen Declaration, Exh. NN.

Verne was ultimately charged twice under the provisions of New York Education Law sections 3020-a (disciplinary procedures) and 2590-j(7) (New York City-specific provisions).  The first set of charges was initiated on February 4, 2020 and stemmed from Verne's alleged misconduct, insubordination, incompetence, and neglect of duty.  Glass Declaration, Exh. 26.  Katz was the signatory on this set of charges.  *Id.*  An attorney for the DOE had signed specifications about five days earlier that identified several of the infractions discussed above as partial bases for the charges.  Defts. 56.1 Stmt. ¶ 101; Rosen Declaration, Exh. WW.  On February 6, 2020, in light of these pending charges, Verne was reassigned from her classroom teaching duties to working in the library.  Defts. 56.1 Stmt. ¶ 102; Verne Dep. Tr. at 117:15-18.  As part of her library duties, Verne was assigned by Katz to draft short stories in Spanish to be used in the classrooms and to make school posters.  Verne Dep. Tr. at 89:1-6, 118:9-14.  Verne was charged again under New York Education Law sections 3020-a and 2590-j(7) on November 3, 2020 for misconduct, insubordination, incompetence, and neglect of duty, specifically stemming from the alleged verbal

abuse incident on September 27, 2019.  Glass Declaration, Exh. 27; Rosen Declaration, Exh. YY (specifications letter); *see also* Defts. 56.1 Stmt. ¶ 104; Rosen Declaration, Exh. NN.  Katz testified that both sets of charges were dropped upon Verne's retirement in November 2021.  Defts. 56.1 Stmt. ¶ 114; Glass Declaration, Exh. 9 ("Katz Dep. Tr.") at 190:8-9.

Also at issue in this case are two accommodation requests that Verne made while working at FDR High School: one for an assignment to an early session schedule for the fall 2019 semester and another for remote work in September 2021.  As to the former, FDR High School has two school day sessions, split into early and late.  Defts. 56.1 Stmt. ¶ 54.  The early session typically ends between 2:00 p.m. and 3:00 p.m.; the later session runs until 4:00 p.m. or 4:30 p.m.  *Id.* ¶ 55.  Pursuant to a Collective Bargaining Agreement ("CBA") between the school district and the teacher's union, FDR High School teachers can fill out a program preference sheet at the end of each school year to indicate their preferred session for the upcoming fall semester.  *Id.*  When the school is unable to fully staff a session based on teacher preferences, teachers are then assigned by rotation to that session by reverse order of seniority.  *Id.* ¶ 57.

In June 2019, Verne indicated her preference to be assigned to the early session for the fall 2019 semester.  *Id.* ¶ 59.  Verne discussed her early schedule preference in June 2019 with Messmann and may have mentioned both her Sabbath observance and need to attend physical therapy at that time.  Glass Declaration, Exh. 6 ("Messmann Dep. Tr.") at 88:17-89:24.  Verne had previously received a religious accommodation for Sabbath observance for the fall 2013 semester. Defts. 56.1 Stmt. ¶ 66; Rosen Declaration, Exh. AA.  Nevertheless, Verne was assigned to teach during the late session for the fall 2019 semester.  Defts. 56.1 Stmt. ¶ 60.  The parties dispute whether that assignment was required because not enough staff had requested the late session and it was Verne's turn in the rotation.  *Id.*; Pl. Counter 56.1 Stmt. ¶ 60.  In any case, Verne filed a

union grievance on September 5, 2019, challenging her assignment to the late session.  Defts. 56.1
Stmt. ¶ 73.  The grievance was denied as untimely because Verne filed it after the CBA-mandated
deadline for filing preference sheet-related grievances.  *Id.*  Verne thereafter provided Katz with
medical records and sent an email to Messmann, copying Katz, in which she complained that her
schedule request "due to [her] medical condition and religious beliefs was ignored."  Defts. 56.1
Stmt. ¶ 80; Glass Declaration, Exh. 10.  In late September 2019, after receiving those medical
records, Katz emailed Verne the paperwork to be completed for requesting a reasonable
accommodation.  Defts. 56.1 Stmt. ¶¶ 80, 82.

It appears that the union appealed the denial of Verne's grievance to the superintendent.
*See* United Fed'n of Tchrs., *Grievances* (Feb. 1, 2018), https://www.uft.org/news/you-should-
know/know-your-rights/grievances (discussing procedures for the United Federation of Teachers
to initiate a grievance or appeal a denial on behalf of an employee).  Verne, union representatives,
and the superintendent met in early October 2019 to discuss her grievance, at which point one of
the union representatives informed the superintendent that Verne was "requesting an early
session . . . because [Verne] ha[s] a medical condition that requires medical treatments that have
been scheduled and [Verne] ha[s] been unable to get to on time."  Rosen Declaration, Exh. CC
(October 11, 2019 letter from the superintendent summarizing the October 3, 2019 meeting and
denying the grievance).  The superintendent nevertheless denied the grievance on October 11,
2019 on the basis that Verne had failed to inform Katz of her health-related needs prior to the start
of the school year, despite Verne having received the teaching schedule two months prior.  *Id.*  On
October 15, 2019, Verne requested—and was granted—so-called "Restoration of Health" leave.
Defts. 56.1 Stmt. ¶ 92.  Verne took this leave from October 16, 2019 to January 6, 2020.  *Id.*  Verne
claims that she "ha[d] no choice" but to take this leave because of the superintendent's denial of

her grievance, and that she was "forced to cover her salary during this medical leave by using time from her sick bank." Pl. Counter 56.1 Stmt. ¶ 225; Verne Dep. Tr. at 138:23-24.

With respect to Verne's second accommodation request, Verne submitted a request for remote work on September 19, 2021. Defts. 56.1 Stmt. ¶ 109; Rosen Declaration, Exh. ZZ. The request was administratively closed on September 28, 2021 because Verne failed to submit adequate supporting medical documentation. Defts. 56.1 Stmt. ¶ 111; Rosen Declaration, Exh. AAA. Verne subsequently applied again for "Restoration of Health" leave on October 5, 2021. Defts. 56.1 Stmt. ¶ 112; Rosen Declaration, Exh. BBB. Although the parties appear to have some disagreement on how the DOE handled this request, the record shows that the request was at a minimum approved for a period of September 27 to November 4, 2021. Defts. 56.1 Stmt. ¶ 112; Rosen Declaration, Exh. BBB. Verne then resigned from the DOE on or about November 5, 2021. Defts. 56.1 Stmt. ¶ 113; *see* Verne Dep. Tr. at 21:5-11 (testifying that she retired at some point "in between November 4th and November 6th").

## B.     Procedural History

Verne initiated this action on June 21, 2021, Dkt. 1, and filed her Amended Complaint on December 3, 2021, Dkt. 26. On September 30, 2022, the Court granted in part and denied in part Defendants' motion to dismiss. *Verne*, 2022 WL 4626533. After that Opinion and Order, the following claims remain: (1) the First Cause of Action to the extent it alleges age discrimination and a hostile work environment in violation of the ADEA against the DOE, Am. Compl. ¶¶ 59-61; (2) the Second Cause of Action to the extent it alleges a failure to accommodate in violation of Title VII against the DOE, *id.* ¶¶ 62-64; (3) the Third Cause of Action to the extent it alleges disability discrimination, a hostile work environment, and a failure to accommodate in violation of the ADA against the DOE, *id.* ¶¶ 65-68; and (4) the Fifth Cause of Action, to the extent it alleges

age discrimination and a hostile work environment in violation of the NYCHRL against Katz, *id.*
¶¶ 72-74.[3]

Following the close of discovery, Defendants moved for summary judgment on January
13, 2023.  Dkts. 60, 61 ("Motion"), 62-65.  Verne filed her opposition on March 24, 2023, Dkts.
68-70, and Defendants replied on May 8, 2023, Dkt. 73.

## II.  Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  "Summary judgment is appropriate '[w]here the record taken as a whole could not
lead a rational trier of fact to find for the non-moving party.'"  *Mhany Mgmt., Inc. v. Cnty. of
Nassau*, 819 F.3d 581, 620 (2d Cir. 2016) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio
Corp.*, 475 U.S. 574, 586 (1986)).  "A genuine dispute exists where 'the evidence is such that a
reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might
affect the outcome of the suit under the governing law.'"  *Chen v. 2425 Broadway Chao Rest.,
LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In conducting this review, the Court
"resolve[s] all ambiguities and draw[s] all reasonable inferences in favor of the nonmoving party."
*Mhany Mgmt.*, 819 F.3d at 620.

"The movant bears the initial burden of demonstrating 'the absence of a genuine issue of
material fact,' and, if satisfied, the burden then shifts to the non-movant to present 'evidence

---

[3] In the September 30, 2022 Opinion and Order, the Court also granted Verne leave to
further amend the Amended Complaint to the extent she could resolve the pleading deficiencies
that the Court identified.  *Verne*, 2022 WL 4626533, at *18.  Verne did not file another amended
complaint.

sufficient to satisfy every element of the claim.'"  *Chen*, 2019 WL 1244291, at *4 (quoting

*Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).  The non-movant "may not rely on

conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence

showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426

F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted).  The non-movant must present

more than a "scintilla of evidence." *Anderson*, 477 U.S. at 252.  "Where no rational finder of fact

could find in favor of the nonmoving party because the evidence to support its case is so slight,

summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)

(internal quotation marks omitted).

### III.  Discussion

As indicated above, Verne's remaining claims fall into two categories: claims under federal

law against the DOE and a claim under the NYCHRL against Katz.  The Court will address each

set in turn, mindful of its discretion to exercise supplemental jurisdiction over the city law claims

under 28 U.S.C. § 1367.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

### A.  Federal Discrimination Claims

Verne's First and Third Causes of Action allege that the DOE engaged in, respectively, age

discrimination in violation of the ADEA, Am. Compl. ¶¶ 59-61, and disability discrimination in

violation of the ADA, *id.* ¶¶ 65-68.  The ADEA makes it illegal for a covered employer "to fail or

refuse to hire or to discharge any individual or otherwise discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's age."  29 U.S.C. § 623(a)(1).  The ADA similarly makes it unlawful for a covered

entity to "discriminate against a qualified individual on the basis of disability in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

The burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs both claims. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (ADEA); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (ADA). To succeed under this framework, "a plaintiff must first demonstrate a *prima facie* case of employment discrimination by showing that: '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)). "[O]nce a plaintiff produces minimal evidentiary support for the claim of discriminatory motivation, the burden of production shifts to the employer to articulate a non-discriminatory reason for the adverse employment action." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). If an employer meets this burden, a plaintiff "must prove that the employer's proffered reason was a pretext for discrimination . . . by presenting facts, which taken in his favor, suffice to show that a triable issue exists as to whether his age [or disability] was a but for cause of" the adverse employment action. *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014); *McCrain v. Metro. Transp. Auth.*, No. 17 Civ. 2520 (RA), 2020 WL 1285634, at *13 (S.D.N.Y. Mar. 18, 2020) (ADA). The Second Circuit has counseled that "[a] trial court must be cautious about granting summary judgment to an employer [in a discrimination case] when, as here, its intent is at issue." *Gallo v. Prudential Residential Servs., LP*, 22 F.3d 1219, 1224 (2d Cir. 1994).

1.      *Prima Facie* **Case**

"[A] [p]laintiff's burden at the *prima facie* stage often is described as *de minimis*.  It is not, however, nonexistent.  If the plaintiff fails to establish any element of [her] *prima facie* case, summary judgment is appropriate."  *Wellington v. Spencer-Edwards*, No. 16 Civ. 6238 (AT), 2019 WL 2764078, at *3 (S.D.N.Y. July 1, 2019) (third alteration in original); *see Griffith v. Metro. Transit Auth.*, No. 19 Civ. 6234 (AT), 2022 WL 845786, at *5 (S.D.N.Y. Mar. 22, 2022), *modified in unrelated part on reconsideration*, 2022 WL 16540877 (Oct. 28, 2022) (same for ADEA claims).  "[N]o amount of evidence permits a plaintiff to overcome a failure to make out a *prima facie* case."  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010).

As to the first prong, the DOE does not contest that Verne is a member of a protected class for purposes of the ADEA.  The DOE does contest, however, that Verne falls within the protected class for purposes of the ADA, arguing that she has "failed to make the required showing [of 'a physical or mental impairment that substantially limits one or more major life activities,' 42 U.S.C. § 12102(1)(A)] as she unequivocally testified that she suffered no limitations—much less substantial limitations—in working as a teacher."  Motion at 3; *accord id.* at 12; *see* Defts. 56.1 Stmt. ¶ 7.  The DOE's argument overlooks Verne's claim of disability based on the difficulties she experiences walking due to osteoarthritis.  *See* Opposition at 6.  Walking is explicitly a "major life activity" under the ADA, 42 U.S.C. § 12102(2)(A), and the medical records that Verne has provided illustrate that in 2019 she was only "[a]ble to walk without significant pain for 10-15 min[utes]," Glass Declaration, Exh. 3, at 4.  Reading the record in the light most favorable to Verne, a rational juror could thus conclude that Verne was disabled under the ADA.  *Cf. Parada v. Banco Industrial de Venezuela, C.A.*, 753 F.3d 62, 69-70 (2d Cir. 2014) (citing favorably to

district court decisions that found an "inability to stand, sit, or walk" for more than fifteen or thirty minutes probative of a substantial limitation finding).

Turning to the second prong, Verne has provided sufficient evidence of her qualification to be a teacher at FDR High School. She began working as a full-time Spanish teacher at FDR High School in 2005, and previously worked as a substitute teacher for the DOE. Defts. 56.1 Stmt. ¶ 2; Glass Declaration, Exh. 1. During her time at FDR High School, including in the years immediately prior to the 2018-2019 school year, Verne regularly received "effective" and "highly effective" ratings in her performance review. *See* Glass Declaration, Exhs. 12-14. Further, Verne contends that the supposed performance issues that began in the 2018-2019 school year were not legitimate, but rather pretexts for discrimination. *See also infra* III.A.3. Indeed, she testified that Katz embarked on a campaign against older teachers by giving them unwarranted negative performance reviews and filing baseless section 3020-a charges against them, suggesting that the school was applying performance benchmarks in a discriminatory manner. *See* Verne Dep. Tr. at 56:7-65:9.

The DOE argues that Verne's performance issues demonstrate that she was not qualified to work as a Spanish language teacher at FDR High School. Motion at 4-6. The Second Circuit has cautioned in the context of a Title VII discrimination claim that it is "it [can be] inappropriate to evaluate the employee's misconduct in the context of the *prima facie* case." *Ruiz*, 609 F.3d at 493. "[I]f the employer is applying its criteria for satisfactory job performance in an inconsistent, arbitrary, or discriminatory manner, then there is a question of fact as to whether the criteria reflect the employer's honestly-held expectations or whether the criteria merely provided a pretext for unlawful discrimination." *Id.* (internal quotation marks omitted). Accordingly, the Court will not consider Verne's alleged performance issues at this stage.

As to adverse employment actions, in its September 30, 2022 Opinion and Order, the Court determined that, for purposes of a Rule 12(b)(6) analysis, Verne adequately alleged two adverse employment actions for purposes of her *prima facie* case: (1) the denial of her early schedule request in fall 2019 resulting in her being forced to take medical leave and (2) the initial and supplemental section 3020-a charges against Verne and subsequent reassignment from her teaching duties. *Verne*, 2022 WL 4626533, at *9. Consistent with the allegations in her Amended Complaint, Verne testified at her deposition that, after she was denied an early schedule, she took medical leave through January 6, 2020, Defts. 56.1 Stmt. ¶ 92; *see* Verne Dep. Tr. at 99:1-11, which entailed her "us[ing] all of the time that [she] had in the [sick] bank," thereby "cost[ing] money," Verne Dep. Tr. at 138:23-25; *see* Pl. Counter 56.1 Stmt. ¶¶ 224, 225 ("Having no choice due to her medical condition and denial of reasonable accommodation requests, Plaintiff took an approved medical leave from October 16, 2019, through January 6, 2020. . . . Plaintiff was forced to cover her salary during this medical leave by using time from her sick bank."). Thus, the effect, according to Verne, was that she had to use her accumulated sick leave in order to keep her employment, and thus not having that leave later available, which is analogous to an employee being placed on unpaid leave. *Cf. Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 264 (E.D.N.Y. 2015) ("Placing an employee on unpaid leave can constitute an adverse employment action.") (collecting cases).

The DOE's position that Verne's reassignment to the library in light of the pending section 3020-a charges was not an adverse action because Verne "continued to work on assignments pertaining to the Spanish language curriculum" and because she "continue[d] to earn the same salary, retain[ed] the same benefits, and work[ed] the same hours," Motion at 7, is unavailing. An adverse action can stem from "significantly diminished material responsibilities." *Mathirampuzha*

*v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks omitted); *see also Beyer v. Cnty. of Nassau*, 524 F.3d 160, 165 (2d Cir. 2008) (explaining that "an adverse employment action can exist when an employee's new assignment is materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement" (internal quotation marks omitted)).  The reassignment letter explicitly noted that Verne's "duties will be restricted to administrative tasks," Glass Declaration, Exh. 28, and the DOE does not dispute that Verne stopped teaching at that point, *see* Motion at 7 ("[Verne] was reassigned out of the classroom.").  Cases that have found teaching reassignments not to be adverse actions generally have involved teachers who were reassigned to a new grade or subject, not teachers who were forced to stop teaching altogether.  *See Clarke-Green v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 778 (RRM), 2019 WL 13149583, at *7 (E.D.N.Y. Mar. 20, 2019) (collecting cases).

Finally, the fourth prong—regarding an inference of discrimination—is discussed separately below for both claims, in recognition of the fact that "a plaintiff who can prevail at the third stage of the *McDonnell Douglas* process has necessarily demonstrated circumstances giving rise to an inference of discrimination, and a plaintiff who cannot prevail at the third stage cannot prevail on his/her claim whether or not there exist circumstances giving rise to an inference of discrimination."  *Nikolakopoulos v. Macy's, Inc.*, No. 20 Civ. 1641 (KPF), 2022 WL 3903595, at *13 (S.D.N.Y. Aug. 30, 2022) (internal quotation marks omitted).

### 2. Nondiscriminatory Reason

As noted, after a plaintiff has established a *prima facie* case of discrimination, the employer must set forth a nondiscriminatory reason for the adverse employment action.  The employer's burden in this regard is low.  "This burden is one of production, not persuasion; it can involve no credibility assessment."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)

(internal quotation marks omitted).   "Defendants meet their minimal burden of proffering a nondiscriminatory reason for their actions as long as their factual assertions, if true, support the non-discriminatory reason."  *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 587 (S.D.N.Y. 2012) (internal quotation marks omitted).

The DOE has met its burden of production, identifying multiple nondiscriminatory reasons for the adverse employment actions: poor performance, repeated tardiness and absences, verbal abuse, and insubordination.  Motion at 9-10.  As to poor performance, for instance, Verne received an overall rating of "developing" for the 2018-2019 school year, Rosen Declaration, Exh. I, as well as "a mix of 'ineffective' and 'developing' ratings" as part of an October 2019 annual performance, *id.*, Exh. JJ.  As to repeated tardiness and absences, Verne received a disciplinary letter on June 14, 2019, because of her "excessive" number of tardy arrivals at school during the 2018-2019 school year, *id.*, Exh. Z, and a similar warning for absences on June 24, 2019, *id.*, Exh. W.  As to verbal abuse, Verne received a disciplinary letter based on the alleged incident that occurred on September 27, 2019, when Verne supposedly told a student that "[y]ou kids are disrespectful and your parents didn't raise you right."   *Id.*, Exh. NN.   That letter noted that Verne's supposed comment to the student constituted "verbal abuse" under school district guidelines and that multiple students had confirmed that Verne made the comment. *Id.*[4]  Finally, as to insubordination, Verne received a letter on January 30, 2020, which specified insubordination as a basis for the first set of section 3020-a charges, alleging that Verne "engaged in insubordinate conduct, in that she

---

[4] As discussed, Verne also was issued a disciplinary letter on June 10, 2019, about an incident when she allegedly "treat[ed] [a] student . . . unfairly" by not accepting the student's work and giving her a zero on a test because the student failed to sit in a particular seat.  Rosen Declaration, Exh. U.  Because this letter did not mention verbal abuse, the Court does not treat it as substantiation for the verbal abuse justification.

failed to follow the World Language Department Grading Policy and/or failed to follow a directive from administration to correct her gradebook." *Id.*, Exh. WW.

### 3. Claims of Pretext

Turning to the third step of the *McDonnell Douglas* framework, Verne argues that "[t]here is ample evidence that [the DOE's] proffered legitimate[,] non-discriminatory reasons for the adverse employment actions are pretextual," or—at the very least—that "[t]here is conflicting evidence" as to the legitimacy of the proffered reasons, Opposition at 18, such "that age [or disability] was the 'but-for' cause of the challenged employer decision," *Gross*, 557 U.S. at 177-78; *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) ("[T]he ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action."). Showing pretext requires more than "simply some evidence[;] [it] instead requires sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18 Civ. 12137 (JPC), 2023 WL 2745556, at *16 (S.D.N.Y. Mar. 31, 2023) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)); *see also Carvalho v. Assoc. Brands Inc.*, 707 F. App'x 742, 744 (2d Cir. 2017) (applying the *Van Zant* standard to ADA claims); *Mason v. MTA N.Y.C. Transit Auth.*, 221 F. App'x 16, 17 (2d Cir. 2007) (same for ADEA claims). As noted above, the broader question at this juncture is whether Verne can "present[] facts, which taken in [her] favor suffice to show that a triable issue exists as to whether [her] age [or disability] was a 'but for' cause of [the adverse employment actions]." *Delaney*, 766 F.3d at 168. The Court evaluates the proffered evidence "as a whole[,] rather than in a piecemeal fashion." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016). Applying these standards, the Court

17

concludes that Verne has presented sufficient facts to show a triable issue as to age discrimination, but not disability discrimination.

### a. Age Discrimination

Verne aims to rebut two of the DOE's proffered nondiscriminatory justifications with regards to the age-based discrimination claim: poor performance and complaints about her grading. She advances three arguments in support of the notion that the former was pretextual. First, Verne claims that the rollout of new instructional guidelines for world language classes is pretextual because, per Messmann's testimony, the guidelines only became official in 2021. Opposition at 19; *see* Messmann Dep. Tr. at 182:4-15. Therefore, "the new standard of teaching was not in effect [by the time] Plaintiff was reassigned from her teaching duties in February 2020." Opposition at 19. Second, Verne asserts that the fact that "observers had discretion in evaluating a teacher's performance to overrate or underrate" a teacher, pointing to Messmann's testimony that she may have overrated Verne in a 2017 observation report in an attempt "to establish trust and rapport," means that a reasonable factfinder could conclude that school "administrators gradually underrate[d] Plaintiff to build a record of poor performance." Opposition at 19; *see* Pl. Counter 56.1 Stmt. ¶ 148; Messmann Dep. Tr. at 170:12-171:3; Glass Declaration, Exh. 30. Finally, in response to the DOE's assertion that her placement on the TIP constituted an "attempt[] to assist Plaintiff [that] cuts against any inference of discrimination," Motion at 8, Verne argues, *inter alia*, "there are material issues of fact as to whether [Verne's] TIP was an actual resource to support [Verne], or another tool to put [Verne] in a position not to succeed and to ultimately remove her from the school." Opposition at 20.

Verne advances further arguments with respect to the complaints about her grading. She generally points to her allegedly "clean record" for more than fifteen years and avers that

"Defendants seized on any type of perceived issue so that they could build a 'record' to justify the planned ouster of Plaintiff." *Id.* at 21.  First, Verne argues that there remain material issues of fact over the legitimacy of the discipline imposed in 2019 for her not following department grading policy, contending that other teachers also struggled to comply with school grading policies and a union representative challenged school administrators' characterization of Verne's grading practices. *Id.* at 21-22; Glass Declaration, Exh. 22 (email from Messmann to world languages teachers in which she "s[aw] that grades are not being entered consistently or are not entered[] at all"); Glass Declaration, Exh. 21 (email from union representative to Katz in which the representative states that she "find[s] no evidence" of "a larger problem involving Ms. Verne's failure to make [students'] grades cumulative").  Second, as support for her record-building argument, Verne cites an apparent disagreement she had with Messmann over the use of a project in lieu of a final exam in early 2019.  Opposition at 22; Glass Declaration, Exh. 18 (emails between Verne and Messmann regarding the project).

While a close call, the record includes sufficient circumstantial evidence to create a triable issue as to whether age was a but-for cause of the section 3020-a charges.  To be sure, many (if not most) of Verne's lines of reasoning for pretext are unavailing.  While the DOE concedes that "there was a soft roll-out of the new State standards" for world language instruction, Reply at 7; Defts. 56.1 Stmt. ¶ 26, the observation reports indicate that Verne's ineffective ratings stemmed from many issues entirely unrelated to the rollout of the new standards.  *See, e.g.*, Rosen Declaration, Exh. R (assigning Verne an "ineffective" rating in 2019 for the "designing coherent instruction" component in part because "[l]earning activities . . . do not follow an organized progression"); *id.*, Exh. G (assigning Verne a "developing" rating in 2018 for the "managing student behavior" component in part because "eight students walked in late . . . [without being]

addressed or asked to sign in any late log"). And the positive feedback Verne received from Messmann in earlier years, no matter Messmann's motivations, and the fact that other teachers also did not abide by the grading policies, do not negate Verne's own performance issues later on. *See Missick v. City of New York*, 707 F. Supp. 2d 336, 350 (E.D.N.Y. 2010) ("The mere fact of past satisfactory performance, followed by negative feedback, is not suggestive of impermissible animus."). Indeed, the fact that the administration also chastised other teachers who failed to abide by school policies on a department-wide basis undercuts Verne's discrimination claim. *Cf. Viscecchia v. Alrose Allegria LLC*, 117 F. Supp. 3d 243, 254 (E.D.N.Y. 2015) (noting, in the Title VII context, that "[c]ourts have found that, even if a policy is facially non-discriminatory, if it is not enforced uniformly across gender lines, a valid discrimination claim may exist"). In addition, to the extent Verne objects as a matter of school policy to the notion that "observers had discretion in evaluating a teacher's performance to overrate or underrate depending upon their feelings toward the teacher," Opposition at 19, "the ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating*," *Rubinow v. Boehringer Ingelheim Pharms.*, 496 F. App'x 117, 119 (2d Cir. 2012).

However, mindful of the fact that "[i]n deciding a motion for summary judgment, 'the court's task is issue identification, not issue resolution,'" the Court concludes that a reasonable factfinder could find for Verne on the question of but-for causation on two theories of age discrimination that Verne advances. *Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20 Civ. 8037 (JPC), 2023 WL 3764823, at *11 (S.D.N.Y. June 1, 2023) (quoting *Repp v. Webber*, 132 F.3d 882, 890 (2d Cir. 1997)). First is what Verne characterizes as a campaign against older teachers. Verne claims that "Principal Katz had a pattern of targeting older teachers after she arrived at FDR high school." Opposition at 13. Verne testified at her deposition that after Katz began her tenure as

principal at FDR High School, multiple senior teachers at the school across various departments

began to receive poor evaluations for the first time and had section 3020-a charges initiated against

them.  *See* Pl. Counter 56.1 Stmt. ¶¶ 131-144; Verne Dep. Tr. at 56:7-65:9.  With respect to the

poor evaluations, Verne explained:

> [M]ost of the old teachers that were before obtaining great observation[s], and
> [were] good teachers, and then they started having bad observations, and then [the
> school] started in a way indirectly discouraging those teachers.  So . . . some of
> them left, and some of them retired, and then [the school] would replace them by
> new teachers.

Verne Dep. Tr. at 56:8-13.  She then identified three older FDR High School teachers at who

started to receive unwarranted subpar evaluations: Vanessa Parkinson, who was over 50 years old,

*id.* at 56:14-22, Adrienne Hamill, who was around Verne's age or older, *id.* at 57:12-18, and

Adrianne Naso, who was over 50 years old, *id.* at 58:11-20.  And with respect to allegation that

Katz issued section 3020-a charges against other senior teachers, Verne cited a math teach named

Alex Moskos and a science teacher whose name she could not remember.  *Id.* at 60:16-61:25; *see*

*also id.* at 62:6-8 ("Most of the teachers that receive a 3020-a, most of them are aged teachers; in

other words, they are around 50 and up.").  Verne alleged that Katz orchestrated these actions to

force senior teachers out of the school.  *See* Pl. Counter 56.1 Stmt. ¶ 134.[5]  The DOE does not

---

[5] Citing principally to the Second Circuit's decision in *Ruiz*, Defendants aim to distinguish
the other senior teachers at the school named by Verne because they in some cases "did not report
to the same supervisors and so are not proper comparators" and in other cases "did not engage in
comparable conduct."  Reply at 5; *see Ruiz*, 609 F.3d at 493 (explaining that establishing disparate
treatment entails "a showing that an employer treated plaintiff less favorably than a similarly
situated employee outside his protected group" (quotation marks omitted)).  The DOE's analysis,
however, inappropriately straightjackets Verne's claim to a disparate treatment claim, where Verne
is not proceeding on that theory.  "A showing of disparate treatment . . . is a recognized *method* of
raising an inference of discrimination for purposes of making out a *prima facie* case."  *Mandell v.
Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (emphasis added).  But disparate treatment is
not the only viable avenue to establish age discrimination.  Verne has testified to a campaign by
Katz throughout the school to target older teachers by giving them poor performance evaluations

appear to contest the fact of the poor evaluations or disciplinary actions; indeed, Katz testified that she gave testimony in prior section 3020-a proceedings against the two teachers Verne appeared to identify.[6]  *See* Katz Dep. Tr. at 11:5-12:3; Verne Dep. Tr. at 60:16-61:2; *see also* Pl. Counter 56.1 Stmt. ¶¶ 137, 141.

Second, a reasonable factfinder also could credit Verne's contention that the TIP was unachievable and thus put in place to ensure she failed.  In a September 27, 2019 email, Verne's union chapter leader raised the concern of the achievability of the TIP with another union official, observing that it includes too many mandates and demands.  Glass Declaration, Exh. 25 ("In my and [another person's] professional opinion, these plan[s] may not be achievable due to too many

---

and initiating section 3020-a charges, and she points to multiple examples.  While distinguishing factors with those employees may ultimately prove relevant at trial, the standard for comparators cited in *Ruiz* simply does not apply to Verne's age discrimination claim.

[6] Instead, the DOE points to the fact that most of the evidence of this alleged campaign derives from Verne's testimony, asserting that her "own conclusory and self-serving testimony . . . is insufficient."  Reply at 5.  Apart from Verne's deposition, however, she cites excerpts from Katz's and Messmann's depositions to support certain allegations relating to the ostensible campaign against senior teachers, including: (1) "[a]lthough the assistant principal would generally observe teachers, Principal Katz reviewed the teachers' observation reports," Pl. Counter 56.1 Stmt. ¶ 135; *see* Katz Dep. Tr. at 25:4-5, 28:13-18; Messmann Dep. Tr. at 34:15-19, (2) Katz testified at the section 3020-a proceeding for the chemistry science teacher that Verne referenced, Pl. Counter 56.1 Stmt. ¶ 139; *see* Katz Dep. Tr. at 11:18-12:3, and (3) "AP Messmann had discretion to assign classrooms to teachers and staff," Pl. Counter 56.1 Stmt. ¶ 144; *see* Messmann Dep. Tr. at 58:10-13.  A "plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact," *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (internal quotation marks omitted), particularly when combined with other evidence.  While the Second Circuit has noted that a district court may disregard a plaintiff's unsubstantiated testimony "in the rare circumstance" that the testimony "is contradictory and incomplete" and "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations," *Jeffreys*, 426 F.3d at 554-55 (internal quotation marks omitted), a district court should rely on a plaintiff's stand-alone testimony that it is "consistent and uncomplicated," and not "wholly improbable," *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019).  Having reviewed Verne's deposition testimony, the Court finds that it is not so replete with inconsistencies and improbabilities such that no reasonable juror could credit it.  The testimony may therefore be used to create a genuine issue of material fact.

mandates and demands . . . ."); *see also id.* (observing that "[t]he areas of improvement are too many" and "improvement [to] student discipline is difficult to measure").

These two arguments, with the evidence presented in support, raise genuine issues of material fact as to the school administrators' intent, making summary judgment inappropriate. The Court therefore denies Defendants' motion for summary judgment on Verne's ADEA discrimination claim against the DOE.

### b.  Disability Discrimination

With respect to Verne's ADA discrimination claim, she mounts attacks on two of the DOE's proffered justifications: (1) her repeated tardiness and absences and (2) the purported procedural and contractual defects in Verne's request to be assigned an early session for the fall 2019 semester.  As to the former, Verne urges the Court to discount the DOE's absence-based rationale because most of her absences occurred for medical reasons.  Opposition at 21; Pl. Counter 56.1 Stmt. ¶¶ 43-47; *see* Rosen Declaration, Exh. W (June 24, 2019, letter regarding 2018-2019 school year absences).  In terms of tardiness, she also appears to urge an inference of pretext from her contention that "[a]lthough other teachers were often late due to the lack of parking at the school and alternate side street parking in Brooklyn, the administration did not issue them such disciplinary letters."  Pl. Counter 56.1 Stmt. ¶ 203; Katz Dep. Tr. at 172:7-15; Messmann Dep. Tr. at 96:23-24.  As for her assignment to a late session in fall 2019, Verne contests the DOE's assertion that she "was next in line on the rotation schedule and therefore contractually obligated to be rotated to the late session," Opposition at 22 (quoting Motion at 11)—claiming instead that she "should have been granted her preference for an early schedule based on her seniority," *id.* at 23.  She also takes issue with the DOE's "fail[ure] to make any arrangements to accommodate Plaintiff even after [she] presented notes from her doctor."  Opposition at 23.

Verne's arguments for pretext regarding her absenteeism and tardiness miss the mark. In terms of her absences, Verne notes that the school "acknowledged that most of [her] absences were medically treated." Opposition at 20; *see* Rosen Declaration, Exh. W ("Although most of your absences are medically treated, the number of absences are considered excessive and limit the effectiveness of your instruction."). But that fact alone does not evidence pretext. It is well established that "workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability," *Johnson v. L'Oréal USA*, No. 18 Civ. 9786 (JPC), 2021 WL 4482167, at *15 (Sept. 30, 2021) (quoting *McElwee v. City of Orange*, 700 F.3d 635, 641 (2d Cir. 2012)), and "[t]he ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's disability," *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 n.123 (S.D.N.Y. 2008). Indeed, the June 24, 2019 letter that Verne received related to her twenty-one absences over the 2018-2019 school year explicitly cited DOE regulations mandating that "disciplinary action[s] [for absences 'so numerous as to limit the effectiveness of service'] shall not be precluded even when the cause of absence is a medical or physical condition." Rosen Declaration, Exh. W. And the June 14, 2019 letter to Verne enumerated twelve times when she arrived late at the school during the 2018-2019 school year, totaling five hours and eight minutes of tardiness and including ten instances in the spring semester. *Id.*, Exh. Z. Furthermore, Verne has not come forward with evidence to suggest that the school administration did not issue such letters to other teachers who also frequently were absent from work or arrived at the school late. Katz's testimony that if a teacher "has consistently come in late first period," they might move the schedule so the teacher would not be "late as much," Katz Dep. Tr. at 172:7-15, does not speak to the absence of disciplinary letters issued to such tardy workers. Further, Messmann's testimony

merely confirms that it can be difficult to find street parking near FDR High School.  *See* Messmann Dep. Tr. at 96:23-24.  Without factual support, Verne's "conclusory statements, conjecture, or speculation" are insufficient to defeat summary judgment.  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Verne's scheduling-related pretext arguments fare no better.  The parties do not dispute that, under the CBA, "when there are not enough teacher preferences to fully staff a specific session[,] teachers are then assigned a rotation to a session in reverse seniority in accordance with union contract requirements."  Defts. 56.1 Stmt. ¶ 57.  Verne claims that she should have avoided rotation under this system due to her seniority, Opposition at 17; Pl. Counter 56.1 Stmt. ¶ 211, but once again points to no evidence in the record in support of that proposition.  For instance, neither the CBA, Glass Declaration, Exh. 23, nor Messmann's description of the school's implementation of the rotation system, Messmann Dep. Tr. at 71:17-72:12, shed light on either Verne's relative seniority at the school or its effect on the rotation system.

Further, the DOE's rationale for denying her early session-related grievance on October 11, 2019 is readily apparent from the record: Verne simply waited too long to raise a need for medical accommodations.  Rosen Declaration, Exh. CC ("I deny your grievance because you failed to inform the principal of your health needs prior to the start of school even though you had been given the schedule two months prior without any objection or cause for concern."); *see also* Katz Dep. Tr. at 174:13-19 (Katz testifying that if Verne had known that she had "been given a program that she cannot teach because she's got a doctor's appointment, you [have] got to give me a heads up," and that "[s]he could have communicated with me the first day back").  By that point, as the

denial letter suggests, attempting to move the schedule was simply too disruptive, an obvious point which Verne has not called into doubt.[7]

Verne's suggestion that she put the administration on notice about her medically induced need for an earlier schedule moves the ball no further.  Even assuming that Messmann was on notice by June 2019 about Verne's need for an earlier schedule to attend physical therapy appointments—a point on which there is inconsistent testimony, *compare* Messmann Dep. Tr. at 229:14-21 (Messmann testifying that she could not recall if Verne had brought up medical concerns over scheduling in June 2019) *with* Verne Dep. Tr. at 84:18-20 (Verne testifying that she "mentioned I have to go to therapy" at a June 2019 meeting with Messmann)—that fact alone does not suffice to show pretext for the school's application of the CBA's rotation system.  Nor does it provide evidence that would allow a reasonable factfinder to determine that Verne's disability was a but-for cause of the failure to assign her an early work schedule in fall 2019, especially in the face of the aforementioned defects with her other arguments.  "The mere existence of disputed factual issues is not enough to defeat a motion for summary judgment," *Omnipoint Commc'ns, Inc. v. Common Council of the City of Peekskill*, 202 F. Supp. 2d 210, 220 (S.D.N.Y. 2002) (citing *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986)); rather, the burden is on Verne to provide more than "simply some evidence" to show both pretext and but-for causation, *Kaye*, 2023 WL 2745556, at *16.

---

[7] As noted, Verne provided medical records to the school at some point in September 2019. Defts. 56.1 Stmt. ¶ 80; *see* Pl. Counter 56.1 Stmt. ¶ 216; Glass Declaration, Exh. 2.  To extent Verne faults the school for failing to resolve her grievance on this issue sooner than October 11, 2019, courts in this Circuit have found in the reasonable accommodation context that even a delay of months in responding to an accommodation request cannot by itself give rise to an inference of discriminatory intent, *see McCrain*, 2020 WL 1285634, at *18 (two-month delay) (citing *Saunders v. Queensborough Cmty. Coll.*, No. 13 Civ. 5617 (PKC), 2015 WL 5655719, at *7 (E.D.N.Y. Sept. 24, 2015) (same for seven months)).

In sum, Verne has failed to produce sufficient evidence for her ADA discrimination claim against the DOE. Her arguments either lack support in the record or are otherwise unavailing. As a result, no reasonable factfinder could find in Verne's favor on the ADA discrimination claim and the Court grants summary judgment in favor of the DOE on this claim.

**B.    Federal Hostile Work Environment Claims**

Verne's First and Third Causes of Action also incorporate a hostile work environment theory into her ADEA and ADA discrimination claims, respectively. Both the ADA's and ADEA's prohibitions on discrimination "encompass 'requiring people to work in a discriminatorily hostile or abusive environment.'" *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 41 (2d Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (ADEA); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (ADA). "To prevail on a hostile work environment claim, [a plaintiff] must show (1) that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Fox*, 918 F.3d at 74 (cleaned up). "Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Id.* (internal quotation marks omitted). "Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." *Id.* (alterations in original) (internal quotation marks omitted). "Importantly, a plaintiff must 'demonstrate that she was subjected to the hostility because of her membership in a protected class.'" *Murtha v. N.Y. State Gaming Comm'n*, No. 17 Civ. 10040

(NSR), 2019 WL 4450687, at *8 (S.D.N.Y. Sept. 17, 2019) (quoting *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)).  Both ADEA and ADA hostile work environment claims are governed by this framework.  *See id.* at *12.

### 1.   ADEA

With respect to Verne's ADEA-based hostile work environment claim, the Court finds that no reasonable factfinder could determine that the DOE's conduct was severe or pervasive enough to create an objectively hostile or abusive work environment.  To be sure, the undisputed evidence establishes that Verne received four letters to file over the course of June 2019, *see* Rosen Declaration, Exhs. T, U, W, Z, and another in October of the same year, *id.*, Exh. Y, and that she was put on the TIP around the same time period, *see* Katz Dep. Tr. at 75:6-16; Glass Declaration, Exh. 25.  Verne fails to come forward with any evidence of overt age discrimination, however.

The closest is Verne's deposition testimony that suggests that Katz insinuated that she was "senile," although she acknowledged Katz never in fact said that.  *See* Verne Dep. Tr. at 75:20-21 ("Q.  Did Principal Katz ever call you senile?  A.  Directly, no.  Indirectly, your action will tell."). Verne did testify, however, that she "believe[d] [she] was discriminated against because [of] [her] age" through Katz's December 2018 medical examination request.  *Id.* at 77:18-22.  But the notion that this single incident—which had no overt connection to her age, *see* Rosen Declaration, Exh. K (request for medical examination)—constituted age-based harassment is belied by the fact that Verne focused almost exclusively on Katz's targeting of her psychological well-being when describing her umbrage at the incident.  *See* Verne Dep. Tr. at 76:3-4 ("By sending me to a psychiatrist, you're questioning my . . . mental ability."); *id.* at 76:15-20 ("The psychiatrist was waiting on my doctor to provide paperwork that would assume that . . . I am mentally disabled. . . . I don't have [a] mental problem."); *id.* at 77:6-8 (similar).  And even assuming *arguendo* that the

medical examination referral somehow constituted an act of age-based harassment, "a single act can create a hostile work environment [only] if it in fact works a transformation of the plaintiff's workplace." *Banks v. Gen. Motors, LLC*, No. 21-2640, 2023 WL 5761361, at *10 (2d Cir. Sept. 7, 2023) (internal quotation marks omitted).  A reasonable factfinder could not conclude that this incident "work[ed] a transformation of [Verne's] workplace" when she does not dispute that "between the directive to attend the evaluation and being found fit for work, [she] continued to report to FDR High School with no change in title, pay or job responsibilities," and testified herself that the DOE took no further actions after she was found fit to serve.  Pl. Counter 56.1 Stmt. ¶¶ 32-33; Verne Dep. Tr. at 76:12-15.

As to her other pieces of purported evidence, while "facially neutral conduct . . . might 'bolster a harassment claim'" in the hostile work environment context, *Cherry v. N.Y.C. Hous. Auth.*, No. 15 Civ. 6949 (MKB), 2017 WL 4357344, at *21 (E.D.N.Y. Sept. 29, 2017) (quoting *Daniel v. T&M Prot. Res., LLC*, 689 F. App'x 1, 3 (2d Cir. 2017)), their use still "requires some circumstantial or other basis for inferring that incidents [age-]neutral on their face were in fact discriminatory." *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002).  Here, the Court concludes that the other neutral incidents Verne identifies—in large part a rehash of her previously discussed discrimination arguments, *see* Opposition at 31-32—do not support the proposition that "that the workplace is permeated with discriminatory intimidation, ridicule, and insult" on the basis of age. *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 20 (2d Cir. 2013).  This conclusion is particularly warranted because of Verne's inability to tie the neutral incidents to her age beyond conclusory statements that she was "repeatedly improperly disciplined on the basis of her age," and that the

"adverse actions started only when Plaintiff approached retirement age." Opposition at 32-33.[8]
Nor does the Court's previous conclusion that there is a genuine issue of material fact as to Verne's
ADEA-based employment discrimination claim create a genuine issue for her hostile work
environment claim, since "a hostile work environment claim requires a different legal analysis
from that applicable to an employment discrimination claim." *Rivera v. Potter*, No. 03 Civ. 1991
(LAP), 2005 WL 236490, at *1 n. 2 (S.D.N.Y. Jan. 31, 2005). The Court therefore grants summary
judgment in favor of the DOE on Verne's ADEA-based hostile work environment claim.

### 2.  ADA

Verne's ADA-based hostile work environment claim likewise fails. Much like with her
ADA-based discrimination claims, *supra* III.A.2.b, Verne fails to produce sufficient evidence in
the record that she was subjected to hostility *because* of her disability. Verne's subjective feeling
that she was "being targeted and bullied" in part based on her medical condition, Glass Declaration,
Exh. 10, while relevant to the Court's analysis, cannot alone show a hostile work environment.
*See Wallace v. Crab House, Inc.*, No. 21 Civ. 5757 (LJL), 2023 WL 2477819, at *7 (S.D.N.Y.
Mar. 13, 2023) ("The subjective feeling of discomfort is not sufficient to make out a claim for
hostile work environment."); *cf. Banks*, 2023 WL  5761361, at *14 (concluding, in the Title VII
context, that a reasonable jury could find in the plaintiff's favor on a hostile work environment
claim based on the fact that the plaintiff "took multiple medical leaves, sought psychological
treatment, and was prescribed anti-anxiety medication to cope with the stress and anxiety she

---

[8] While the Second Circuit has found that discriminatory conduct suffered by other
employees in a plaintiff's workplace can prove relevant to a hostile work environment analysis,
*see, e.g.*, *Banks*, 2023 WL 5761361, at *12, Verne develops no argument about her coworkers'
experiences in connection with this claim. *Cf. Secrest v. Merck & Co. (In re Fosamax Prods. Liab.
Litig.)*, 807 F. Supp. 2d 168, 185 (S.D.N.Y. 2011) (noting that, under the Rule 56 standard, "[a]
district court is not . . . required to engage in speculation on behalf of the non-moving party").

incurred from the discriminatory harassment").  The Court therefore grants summary judgment in favor of the DOE on Verne's ADA-based hostile work environment claim.

## C.    Federal Failure to Accommodate Claims

Verne's Second and Third Causes of Action allege that the DOE failed to accommodate her religion in violation of Title VII and failed to accommodate her disability in violation of the ADA, respectively.  Am. Compl. ¶¶ 62-68.  The failure to accommodate standards under both Title VII and the ADA are governed by the *McDonnell Douglas* burden-shifting analysis.  *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (ADA); *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 (S.D.N.Y. 2021) (citing *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016)) (Title VII).

### 1.    ADA

"An employer may . . . violate the ADA by failing to provide a reasonable accommodation."  *McMillan*, 711 F.3d at 125.  A plaintiff establishes a *prima facie* failure to accommodate claim by showing that she "(1) . . . is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *Id.* at 125-26.  Similar to the burden-shifting analysis for discrimination based on adverse employment actions, "the plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [her] to perform the essential functions of [her] employment."  *Id.* at 126 (internal quotation marks omitted).

At issue are the DOE's alleged denials of two requests for reasonable accommodations for Verne's disability:  Verne's request for an early schedule for the fall 2019 semester, Defts. 56.1

Stmt. ¶¶ 59-60; *see also* Messmann Dep. Tr. at 88:17-89:24, and her request in 2021 to work remotely, Defts. 56.1 Stmt. ¶ 109; Rosen Declaration, Exh. ZZ.  *See* Motion at 11-12.  The DOE asserts that summary judgment is warranted in its favor because (1) Verne cannot show that the DOE ever actually "refused to make [reasonable accommodations]" because of Verne's failure to sufficiently notify the school about her requests in both cases and (2) her request for an early session during the fall 2019 semester was not a *reasonable* accommodation request.  Motion at 11-15.[9]

The Court agrees with Defendants with respect to the 2021 claims.  As noted above, a plaintiff alleging an actual employer refusal to make a reasonable accommodation must make out a *prima facie* case.  Verne does not dispute that her September 2021 remote work request was "administratively closed due to a lack of supporting medical documentation."  Defts. 56.1 Stmt. ¶ 111; *see* Rosen Declaration, Exh. AAA.  While the record, interpreted in the light most favorable to Verne, appears to show that the DOE ultimately accepted her supporting medical records on October 5, 2021, Pl. Counter 56.1 Stmt. ¶ 241; Glass Declaration, Exh. 40, Verne simply retired effective November 5, before hearing back from the DOE, Pl. Counter 56.1 Stmt. ¶ 244; Glass Declaration, Exh. 42.  "An employee seeking an accommodation [under the ADA] is obliged to participate in [an] interactive process in order to help the employer identify the 'precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'"  *Monterroso*, 591 F. Supp. 2d at 579 (quoting 29 C.F.R. § 1630.2(o)(3)).  Further, "an employee who withdraws from the interactive process cannot later allege failure to accommodate."  *Jackson v. Elmhurst Hosp. Ctr.*, No. 10 Civ. 5248 (RRM), 2012 WL 868965, at

---

[9] As discussed at *supra* III.A.1, a rational juror could conclude that Verne was disabled under the ADA.

*6 (E.D.N.Y. Mar. 14, 2012) (quoting *Noel v. BNY-Mellon Corp.*, No. 10 Civ. 9143 (JSR), 2011 WL 4633884, at *2 (S.D.N.Y. Oct. 4, 2011)).  Verne's retirement cut off the interactive process throughout which she could secured a reasonable accommodation.  And the one-month period during which the DOE failed to respond to her request for remote work cannot alone sustain her failure to accommodate claim.  *See McCrain*, 2020 WL 1285634, at *18 (two-month delay) (citing *Saunders*, 2015 WL 5655719, at *7 (same for seven months)).  Verne's remote work request-based failure to accommodate claim therefore fails.

Defendants' arguments about the 2019 early session request are less persuasive, however. First, while Defendants are correct that the ADA requires "covered institution[s] to offer . . . reasonable accommodations" to a disabled individual, but not "every accommodation he requests or the accommodation of his choice," *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186-87 (2d Cir. 2015) (quotations omitted), *see* Motion at 14, Defendants offer no convincing argument for why Verne's early session request was unreasonable.[10]  Moreover, there is at minimum a contested question of fact as to the DOE's claim that Verne did not sufficiently put the administration on notice about her disability, *see* Motion 13, since—as discussed *supra* III.A.3.b—Verne and Messmann offered conflicting testimony about the extent to which Verne made Messmann aware of her medical issues in June 2019.  *See* Messmann Dep. Tr. at 229:14-21; Verne Dep. Tr. at 84:18-20.  And, unlike with Verne's ADA discrimination claim, the timing

---

[10] Defendants' arguments on this front are somewhat opaque.  Their arguments about Sabbath observance, *see* Motion at 14, are inapposite to Verne's ADA claim and are addressed at *infra* III.C.2 in the context of Verne's Title VII failure to accommodate claim.  Defendants also assert that "Katz and Messmann both testified that Plaintiff was assigned to a late session due to the contractually required rotation schedule," without developing this argument as a justification for failing to accommodate Verne's disability any further.  Motion at 14.  The Court declines to reach this argument, where the DOE has done so little to develop it.  *See Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)).

question could well end up being dispositive for her ADA failure to accommodate claim.  Whether the school administration was put on notice about Verne's request in June or September 2019 bears on the question of undue hardship.  *See McMillan*, 711 F.3d at 128 ("If a plaintiff suggests plausible accommodations, the burden of proof shifts to the defendant to demonstrate that such accommodations would present undue hardships and would therefore be unreasonable.").  As discussed above, the DOE's rationale for denying her scheduling request in October 2019 was that granting it at that point would have caused "challenging" administrative problems for the school, Rosen Declaration, Exh. CC, and—relatedly—Katz's testimony suggests that the school could have more easily accommodated Verne's request had she made it in June 2019, Katz Dep. Tr. at 173:20-174:21.  The timing of Verne's request, and more specifically the question of whether Verne did make a disability-based scheduling request in June 2019, thus presents a genuine question of material fact.[11]  *See Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19 (2d Cir. 2015) ("An employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct and specific to give the employer notice of the needed accommodation." (internal quotation marks omitted)).  The Court therefore grants summary judgment on Verne's ADA reasonable accommodation claim in part and denies it in part.  Verne's failure to accommodate claim on the 2019 scheduling request may proceed, and her claim based on her September 2021 request to work remotely is dismissed.

---

[11] The Court notes that Verne's conversation with Messmann may alone suffice to constitute a "request" under the ADA.  The Second Circuit has held "that an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious" even without a formal request by the employee, *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008), and—as Verne points out, *see* Pl. Counter 56.1 Stmt. ¶ 68—the record shows that DOE regulations only required an employee requesting accommodation to "first discuss the request informally with his/her supervisor," Rosen Declaration, Exh. MM.

2.      **Title VII**

Verne's remaining Title VII claim alleges a failure to accommodate her religion based on

the denial of her fall 2019 request for the early work schedule.  *See* Opposition at 27-29.  "Title

VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of

their employees unless doing so would impose an undue hardship on the conduct of the employer's

business."  *Groff v. DeJoy*, 143 S. Ct. 2279, 2286 (2023) (internal quotation marks omitted); *see*

42 U.S.C. § 2000e-2(a)(1) (making it unlawful for a covered employer "to discriminate against

any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's . . . religion"); *id.* at § 2000e(j) (defining "religion" for Title VII

purposes as including "all aspects of religious observance and practice . . . unless an employer

demonstrates that he is unable to reasonably accommodate to an employee's . . . religious

observance or practice without undue hardship on the conduct of the employer's business").  A

plaintiff "who seek[s] to make out a prima facie case of religious discrimination must show that

(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they

informed their employers of this belief; and (3) they were disciplined for failure to comply with

the conflicting employment requirement."  *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir.

2006) (internal quotation marks omitted).  The "discipline" aspect of the third prong "has been

equated with the requirement of an adverse employment action."  *Price v. Cushman & Wakefield,

Inc.*, 808 F. Supp. 2d 670, 695 (S.D.N.Y. 2011).  "Once a prima facie case is established by the

employee, the employer must offer [him or her] a reasonable accommodation, unless doing so

would cause the employer to suffer an undue hardship."  *Id.* (alteration in original) (internal

quotation marks omitted).  The Supreme Court recently clarified that "'undue hardship' is shown

when a burden is substantial in the overall context of an employer's business," and emphasized that this is a "fact-specific inquiry." *Groff*, 143 S. Ct. at 2294.

Defendants claim that Verne has failed to make out a *prima facie* case with respect to all three prongs. Motion at 15-16. The Court agrees as to the third prong, *i.e.*, failure to comply. Verne has not presented evidence that she ever "fail[ed] to comply with the conflicting employment requirement." *Baker*, 445 F.3d at 546. In this case, that requirement would entail a showing that Verne failed to comply with her assigned late schedule. But even viewing the record in the light most favorable to Verne, she has not made that showing. It is undisputed that Verne took an approved medical leave beginning October 16, 2019, Defts. 56.1 Stmt. ¶ 224, but Verne also does not appear to dispute that the late schedule only posed a problem for her Sabbath observance "in the winter months." Pl. Counter 56.1 Stmt. ¶ 178; *see* Defts. 56.1 Stmt. ¶ 69 (describing a potential reasonable accommodation of "a scheduling change on Fridays to commence in accordance with daylight savings"); Verne Dep. Tr. at 81:10-18 (testifying that the start time of the Sabbath varies based on the time of the year). In other words—and as Defendants suggest, Motion at 16—nothing in the record shows that Verne's Sabbath observance was negatively impacted by her late schedule before she took her medical leave. The closest Verne comes to alleging so is her comment during her deposition that she had to "open [the] sabbath in [her] car" when school ended at either 4:10 p.m. or 4:30 p.m., in violation of Seventh Day Adventist practices. Verne Dep. Tr. at 85:24-86:6. But it would not appear that Verne was describing the fall 2019 semester in this comment, given that she only taught until October 2019, and—by her own admission—there would not have been a Sabbath-related conflict during that

time of year.[12]  Nor does Verne's argument that she had "no choice" but to take medical leave in order to observe her religious practices carry her claim over the line: multiple district courts in the Second Circuit have found in similar contexts that Sabbath-observing plaintiffs cannot claim to have satisfied the third prong of the *prima facie* test when they proactively use vacation time "to avoid conflict with religious practices," and, consequently, discipline therefor.  *Lewis v. N.Y.C. Transit Auth.*, 12 F. Supp. 3d 418, 443 (E.D.N.Y. 2014).  And, moreover, Verne's Title VII failure to accommodate claim additionally fails because "unpaid leave can be a reasonable accommodation."  *Livingston*, 563 F. Supp. 3d at 244 (internal quotation marks omitted) (citing, *inter alia*, to *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986) ("[R]equiring respondent to take unpaid leave for holy day observance that exceeded the amount allowed by the collective-bargaining agreement[] would generally be a reasonable one.")).

Accordingly, no reasonable factfinder could find in Verne's favor on her Title VII-based failure to accommodate claim.  The Court therefore grants summary judgment in the DOE's favor on that claim.

## D.    NYCHRL Claims

Verne's Fifth Cause of Action alleges that Katz violated the NYCHRL by engaging in discrimination and creating a hostile work environment.  Am. Compl. ¶¶ 72-74.[13]  "Section 8-

---

[12] Any confusion around Verne's spring 2020 schedule is of no moment, since the adverse action in question only concerns her fall 2019 scheduling request.  *See* Pl. Counter 56.1 Stmt. ¶ 93 (noting that Verne may have received a late schedule during the brief period in the spring 2020 semester when she taught).

[13] In its September 30, 2022 Opinion and Order, the Court declined to dismiss Verne's NYCHRL discrimination claim against Katz.  *See Verne*, 2022 WL 4626533, at *17-18.  In their motion for summary judgment, Defendants seek dismissal of that claim arguing that "the evidence fails to create a triable issue of fact to preclude summary judgment on Plaintiff's claims of age, religion, and disability discrimination."  Motion at 21; *see, e.g., id.* at 23 ("Principal Katz has established that she acted in absence of any discriminatory bias.").  In opposing summary judgment

107(1)(a) of the NYCHRL makes it 'an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the [protected characteristic] of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.'" *Lettieri v. Anti-Defamation League Found.*, No. 22 Civ. 9889 (PAE), 2023 WL 5152447, at *5 (S.D.N.Y. Aug. 10, 2023) (alteration in original) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F. 3d 102, 109-10 (2d Cir. 2013)). "Courts must analyze NYCHRL claims separately from any federal law claims and should construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Bueno v. Eurostars Hotel Co., S.L*., No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022) (quoting *Mihalik*, 715 F. 3d at 109). The standard for a discriminatory act under the NYCHRL is more lenient than the federal standard. A plaintiff need only show that she was "treated . . . less well, at least in part for a discriminatory reason." *Khwaja v. Jobs to Move Am*., No. 19 Civ. 7070 (JPC), 2021 WL 3911290, at *3 (S.D.N.Y. Sept. 1, 2021) (quoting *Mihalik*, 715 F.3d at 110 n.8). The severity and pervasiveness of conduct is "relevant only to the issue of damages" and "the challenged conduct need not even be 'tangible (like hiring or firing).'" *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth*., 872 N.Y.S.2d 27, 40 (1st Dep't 2009)). It is sufficient to "show differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102

---

on her NYCHRL claim, Verne focuses exclusively on age discrimination (apart from a single mention of disability in describing the NYCHRL's scope). *See* Opposition at 33-36. The Court therefore deems her disability and religion-based NYCHRL claims against Katz abandoned. *See Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) ("Where . . . a counseled non-moving party submits a partial response arguing that summary judgment should be denied as to some claims while not mentioning others, that response may be deemed an abandonment of the unmentioned claims. Even where abandonment by a counseled party is not explicit, a court may infer abandonment from the papers and circumstances viewed as a whole." (internal quotation marks and alteration omitted)).

(2d Cir. 2014). For purposes of the NYCHRL, employees "may incur liability only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct." *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 459 (N.Y. 2021).

### 1.     Age Discrimination

Defendants' motion for summary judgment on Verne's NYCHRL age discrimination claim against Katz fails in light of the Court's holding that Verne's ADEA discrimination claim survives. If a reasonable factfinder could conclude that age was a but-for cause of the 2019 early schedule request and the section 3020-a charges, one could necessarily do so as well under NYCHRL's lower mixed-motive standard. *Cf. Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (noting that, in the context of an NYCHRL discrimination claim, "summary judgment is appropriate if the record establishes as a matter of law that discrimination or retaliation played *no* role in the defendant's actions" (cleaned up) (emphasis added)).

Defendants' argument for why Katz cannot be held liable for age discrimination under the NYCHRL largely focuses on the 2018 medical examination request. *See* Motion at 21-23. Defendants argue, for instance, that "there is no individual liability where an individually named defendant does not have ownership interest in the employer or have authority to carry out personnel decisions without prior approval from Human Resources or the managing director." *Id.* at 21. These arguments, however, rest on a faulty premise. Defendants seem to assume that the Court's previous Opinion and Order on their motion to dismiss left only the medical examination request and her alleged insinuation of Verne being senile as relevant adverse employment actions for purposes of the NYCHRL claim. *Id.* at 20; *see also Verne*, 2022 WL 4626533, at *18. Defendants stretch language from the Court's Opinion and Order too far. Unlike the Court's analysis of adverse employment actions for purposes of Verne's federal claims—for which the Court

explicitly rejected all of Verne's post-August 2019 purported adverse employment actions, except for the denial of Verne's early schedule request and the section 3020-a charges, *Verne*, 2022 WL 4626533, at *8-10—the Court's analysis of Verne's NYCHRL claim came to no similar conclusion.  Instead, the Court merely noted that the insinuation of senility and referral for a medical exam sufficed at that point to state a claim that Katz treated Verne less well because of her age for purposes of the NYCHRL, without purporting to pass on the other actions cited in Verne's Fifth Cause of Action.  *Id.* at *18; *see also* Am. Compl. at 14-15.  Indeed, a conclusion that adverse employment actions were sufficiently pleaded for purposes of Verne's federal claims but insufficient for purposes of her NYCHRL claims would have made little sense, given that "the NYCHRL does not require . . . materially adverse employment actions" for a discrimination claim in the first place.  *See Mihalik*, 715 F.3d at 114 (citing *Williams*, 872 N.Y.S.2d at 34).  The Court therefore concludes that the same adverse employment actions that undergirded Verne's ADEA discrimination claim can form the basis of her NYCHRL age-based discrimination claim.  Of course, Verne would still need to satisfy the standard announced by the New York Court of Appeals in *Doe*.  But the record demonstrates that a reasonable factfinder could attribute at least the filing of the first set of section 3020-a charges to Katz.  On that note, it bears mentioning that the adverse employment action specified in the Court's prior Opinion and Order was the *filing* of charges under New York Education Law section 3020-a(1), and not a later disposition thereof.  *See Verne*, 2022 WL 4626533, at *9.  Unlike with the second set of section 3020-a charges, Defts. 56.1 Stmt. ¶ 108, Katz does not appear to dispute that she helped initiate the first set of charges— instead, she argues that the legal department and Teacher Performance Unit would have decided those charges.  *Id.* ¶ 100.  Indeed, Katz testified that she "would be the one [who] would reach outside of FDR to start the [section 3020-a] process."  Katz Dep. Tr. at 103:25-104:2.  The Court

therefore need not reach Katz's claim about her involvement in the 2018 medical examination request, and consequently denies Defendants' motion for summary judgment as to Verne's NYCHRL age-based discrimination claim against Katz.

### 2.      Age-Based Hostile Work Environment

The Court also denies summary judgment in favor of Katz on Verne's age-based hostile work environment claim under the NYCHRL.  The NYCHRL dispenses with the federal "severe and pervasive" test; instead, a plaintiff bringing a hostile work environment claim under New York City law must "prove[] by a preponderance of the evidence that she has been treated less well than other employees because of her [protected status]."  *Williams*, 872 N.Y.S.2d at 39; *see also Ping Chow Wei v. Anthem Inc.*, No. 16 Civ. 468 (SJF), 2018 WL 5622571, at *8 (E.D.N.Y. Sept. 4, 2018) (applying *Williams* to an NYCHRL age-based hostile work environment claim).  Indeed, as one judge of this District has noted, the NYCHRL's lenient standard for hostile work environment claims renders the action's shorthanded name somewhat of a misnomer.  *See Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 341 n.12 (S.D.N.Y. 2021) ("[T]he NYCHRL does not require that a plaintiff show a 'hostile' work environment—just one in which she is treated 'less well' than others because of her protected characteristic. . . .  As a result, the phrase 'hostile work environment' does not accurately reflect the nature of the standard applicable to a claim under the NYCHRL; a 'less nice work environment' claim is not quite as gripping of a title.").  Thus, the analysis of Verne's hostile work environment claim under New York City law is akin to that for her ADEA discrimination claim.  The Court's prior conclusion that a reasonable factfinder could conclude that she was discriminated against on the basis of age necessarily militates toward a finding that Verne was "treated less well" on the same basis.  The Court therefore similarly denies summary judgment in favor of Katz on Verne's hostile work environment claim under the NYCHRL.

### IV.  Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and is denied in part.  It is granted in that the Court dismisses Verne's ADA discrimination claim, ADEA hostile work environment claim, ADA hostile work environment claim, ADA failure to accommodate claim with respect to her September 2021 remote work request, Title VII failure to accommodate claim, and NYCHRL claim to the extent it alleges religion and disability discrimination.  Summary judgment is denied in all other respects.  As a result, Verne's age discrimination claim under the ADEA, failure to accommodate claim under the ADA with respect to her 2019 scheduling request, and age discrimination and age-based hostile work environment claim under the NYCHRL may proceed at this point.  The parties are directed to appear for a status conference on Thursday, October 19, 2023, at 2:00 p.m. to discuss a trial date.  The conference will take place in Courtroom 12D of the Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, New York 10007.  The Clerk of Court is respectfully directed to close Docket Number 60.

SO ORDERED.

Dated:  September 28, 2023
      New York, New York

                                   JOHN P. CRONAN
                          United States District Judge